Karen JONES, Plaintiff–Appellant,

v.

FEDERATED FINANCIAL RESERVE CORPORATION; Randy Lind; TRW, Inc.; Janice Caylor, Defendants–Appellees.

No. 96–1593.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 21, 1997.

Decided May 22, 1998.

Martin J. Smith (argued and briefed), Ann Arbor, MI, for Plaintiff–Appellant.

Allen J. Philbrick (argued and briefed), Conlin, McKenney & Philbrick, Ann Arbor, MI, for Defendants–Appellees.

Before: KEITH, BOGGS, and COLE, Circuit Judges.

## OPINION

COLE, Circuit Judge.

This appeal requires us to determine if civil liability under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, may be imposed on an employer for its employee's actions under a theory of apparent authority. Plaintiff–Appellant Karen Jones brought suit against defendants Federated Financial Reserve Corporation ("Federated"), TRW, Inc., Randy Lind and Janice Caylor, claiming that the defendants willfully and negligently violated the FCRA in connection with the acquisition of a report concerning Jones's credit status. Jones appeals the district court's entry of a directed verdict in favor of Federated on Jones's willful noncompliance claim under 15 U.S.C. § 1681n; the district court's instruction to the jury on Jones's negligent noncompliance claim under 15 U.S.C. § 1681o; the district court's denial of Jones's motion for a new trial; and the district court's exclusion of Jones's expert witness. Because we disagree with the standard of liability relied on by the district court, we reverse the district court's entry of a directed verdict on Jones's willful noncompliance claim as well as the jury's verdict on the negligence claim, and remand for further proceedings.

## I.

### A. Background

Karen Jones married Randy Lind in May 1993, after a brief and largely long-distance relationship. Jones described her relationship with Lind as "weird, erratic, [and] strange" from the outset, and later claimed that Lind was demanding, controlling, and abusive. Upon their marriage, Jones moved to Oregon to live with Lind until October 1993, when she returned to Michigan without

him. At Jones's request, her marriage to Lind was annulled on April 26, 1994. Notwithstanding the annulment, Lind and Jones stayed in contact, and sometimes discussed the possibility of a reconciliation. Eventually, however, Jones moved to a new apartment and took precautions to conceal her new address and phone number from Lind.

On June 17, 1994, Lind called Jones at work, offering to deliver a check representing a portion of their property division. After rejecting Lind's proposal that they meet for lunch or dinner, Jones suggested that they meet at a bar and have a drink. Following an evening together, Lind and Jones quarreled in the morning over his desire to reconcile and her refusal to do so.

Several days later, on June 22, 1994, Jones called Lind and apparently voiced her concern that Lind intended to harass her. Lind denied Jones's assertion, stating "If I wanted to harass you, I'd harass you, because I've known since April 25th where you live." J.A. at 239. After several unsuccessful efforts to learn how Lind obtained her address, Jones had a friend, whose employer had access to credit reporting agencies, check to see if anyone had requested a credit report on her. Further inquiries by Jones led her to discover that Janice Caylor, a Federated employee, whom she knew to be a friend of Lind, had likely procured a report on her credit status on Lind's behalf. Jones later ascertained that Federated, at Caylor's request, had obtained her credit report from TRW, a consumer reporting agency.

Federated is a lessor of a broad range of consumer and business equipment, such as computers, cellular phones, facsimile machines, and machine tools. To facilitate its credit approval and debt collection practices, Federated obtains approximately 25,000 credit reports annually concerning its customers through its on-line credit report request system. TRW supplies the credit reports to Federated, but requires Federated to certify that it will use those reports only for certain permissible business-related purposes.

Caylor, Lind's roommate, was hired as a full-time collector by Federated on June 14, 1994, after having worked for Federated for three months as a collector on a "temporary" basis. During Caylor's temporary and full-time employment at Federated, she was authorized to request customer credit reports from clerks who operated Federated's credit report request system. To obtain a credit report, Federated merely required Caylor to present a request form containing the customer's name, address, and social security number. Federated neither required Caylor to get her supervisor's approval to obtain a credit report, nor oversaw whether credit reports were actually placed in customer files.

Shortly after Lind's marriage to Jones was annulled, Lind began pressuring Caylor to procure Jones's credit report for him. Bowing to Lind's pressure, Caylor obtained a copy of Jones's credit report by completing a request form using information supplied by Lind, and attaching the form to an unrelated business file. Testimony did not suggest that any other Federated employee knew of Caylor's improper request, and Jones's credit report was never placed in the unrelated file that had been used to obtain the report.

### B. Procedural History

On July 11, 1994, Jones filed suit in federal court, alleging negligent and willful violations of the FCRA, 15 U.S.C. § 1681 *et seq.*, and also asserting various state-law tort theories of relief. Jones named Federated, Lind, Caylor, and TRW as defendants. Following discovery, Lind and TRW moved for summary judgment, which the district court denied as to Lind, but granted as to TRW. In addition, all of Jones's state-law tort claims were dismissed with prejudice.

At the inception of the trial, Jones voluntarily dismissed all claims against Lind and Caylor, neither of whom had appeared for the trial. Jones's FCRA claims against the remaining defendant, Federated, were tried to a jury beginning on August 17, 1995.

At the close of evidence, Federated moved for a directed verdict as to Jones's claim against it for willful violation of the FCRA, 15 U.S.C. § 1681n, and for negligent violation of the FCRA, 15 U.S.C. § 1681o. The district court granted Federated's motion as to the claim of willful violation. On the remaining negligent non-compliance claim, the dis-

trict court submitted the question to the jury with an instruction, to which Jones objected, that it could find Federated vicariously liable for Caylor's actions only if Caylor was acting within the scope of her employment or if Federated was negligent in allowing Caylor to obtain the credit report. Based on this instruction, the jury returned a verdict for Federated on August 22, 1995. On September 5, 1995, Jones moved for a new trial, arguing that the jury's verdict was not supported by the evidence and that the district court erred by giving an erroneous jury instruction, by excluding the testimony of an expert witness, and by failing to allow Jones a fair trial in general. The district court denied Jones's motion for a new trial on April 1, 1996. Jones timely appealed the judgment and the denial of her motion for a new trial.

There are five issues before us on appeal: (1) whether Jones is entitled to a new trial based upon the district court's allegedly erroneous jury instruction regarding Federated's liability for negligent violation of the FCRA; (2) whether the district court erred in granting a directed verdict in Federated's favor on Jones's claim of willful violation of the FCRA; (3) whether the jury's verdict was supported by the evidence; (4) whether Jones received a fair trial; and (5) whether the district court erred in excluding the testimony of Jones's expert witness.

## II.

The first two issues before us—the jury instruction challenge and the appeal of the directed verdict—are closely related, in that they both depend on our determination of the following threshold legal question: whether the FCRA authorizes the imposition of liability on an employer for the actions of an employee under the common law doctrine of apparent authority. The FCRA does not address the existence or the scope of vicari-

ous liability. The statutory language focuses on the conduct of consumer reporting agencies and users of credit information in furnishing and using credit reports. *See* 15 U.S.C. § 1681(b) (listing permissible purposes for use and provision of consumer reports).

The FCRA's express language imposes civil liability on "any consumer reporting agency or user," which is either negligent, 15 U.S.C. § 1681o,[1] or willful, 15 U.S.C. § 1681n,[2] in failing to comply with any requirement imposed under the FCRA. The FCRA requirement which Federated allegedly violated is § 1681b, which provides an extensive list of the limited circumstances under which a consumer reporting agency or a user of credit reports may furnish or utilize a consumer report. Federated was required by the statute to comply with § 1681b's permissible uses and purposes when providing and using consumer credit reports.

▪ Because the FCRA does not directly address vicarious liability, we look to the statute's purposes for guidance in determining whether to interpret the FCRA's words to include liability based on the apparent authority of an employee. *See Wells v. United States Steel,* 76 F.3d 731, 737 (6th Cir. 1996); *EEOC v. Kimberly–Clark Corp.,* 511 F.2d 1352, 1357 (6th Cir.1975); 2A Singer, *Sutherland Statutes and Statutory Construction* § 45.09 at p. 40 (4th ed.1984). We are additionally guided by the fact that the FCRA is to be liberally construed in favor of the consumer, *see Guimond v. Trans Union Credit Info. Co.,* 45 F.3d 1329, 1333 (9th Cir.1995), as well as the rule of statutory construction which requires us to read a statutory provision in a manner consistent with the statute's other provisions, *see, e.g., Saxion v. Titan–C–Mfg., Inc.,* 86 F.3d 553, 560 (6th Cir.1996).

---

1. 15 U.S.C. § 1681o states that:

   [a]ny consumer reporting agency or user of information which is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—

   (1) any actual damages sustained by the consumer as a result of the failure;

   (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

2. 15 U.S.C. § 1681n provides for civil liability in cases where the defendant's noncompliance with the provisions of the FCRA is willful, and, in such a case, punitive damages may be awarded. 15 U.S.C. § 1681n(a)(2).

Congress articulated the FCRA's underlying purpose as

> to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this [Act].

15 U.S.C. § 1681(b). Congress also made a finding in enacting the FCRA that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). Thus, the FCRA is aimed at protecting consumers from inaccurate information in consumer reports and at the establishment of credit reporting procedures that utilize correct, relevant, and up-to-date information in a confidential and responsible manner. *See Pinner v. Schmidt*, 805 F.2d 1258, 1261 (5th Cir.1986).

### A. Common Law Theories of Vicarious Liability

In deciding whether an apparent authority rule applies under the FCRA, we first should define the three major types of agency liability. First, a principal may be vicariously liable for an agent's tortious conduct if the principal expressly or implicitly authorized the conduct. *See, e.g., In re Atlantic Fin. Mgmt., Inc.*, 784 F.2d 29, 31 (1st Cir.1986). However, such liability is not applicable here, because it is not alleged that Federated expressly or implicitly authorized Caylor's conduct. Second, a principal may be vicariously liable for an agent's torts under a *respondeat superior* theory. Under a *respondeat superior* rule, a principal is only held vicariously liable for torts committed by an agent when the agent acts for the benefit of his principal within the scope of his employment. *See id.* at 32.

Third, a principal may be vicariously liable for an agent's tortious conduct based upon an apparent authority theory, if the principal cloaked its agent with apparent authority, i.e., held the agent out to third parties as possessing sufficient authority to commit the particular act in question, and there was reliance upon the apparent authority. *See Restatement (Second) Agency* § 8, at p. 30 (1958); *Id.* § 219(2)(d), at p. 481; *American Soc'y of Mechanical Eng'rs, Inc. v. Hydrolevel Corp. ("ASME")*, 456 U.S. 556, 566–67, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) (reviewing theory of apparent authority in context of antitrust liability issue). Under an apparent authority theory, vicarious "[l]iability is based upon the fact that the agent's position facilitates the consummation of the fraud, in that from the point of view of the third person the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business provided to him." *Id.* at 566, 102 S.Ct. 1935. Accordingly, liability may be imposed on a principal under an apparent authority theory irrespective of whether the agent acted for his own purposes, rather than those of his principal. *See Restatement (Second) Agency* § 262, at p. 571 (1958).

Jones contends that the district court erred in concluding that an apparent authority rule did not apply under the FCRA and therefore erred in giving the challenged jury instruction and directing a verdict on Jones's willful violation claim. Federated contends that the *respondeat superior* rule, upon which the district court based both its grant of a directed verdict and its allegedly erroneous jury instruction, governs the imposition of vicarious liability on Federated under the FCRA. In Federated's view, an apparent authority rule is not applicable here and is incompatible with the FCRA as a matter of law. We disagree with Federated and hold that a principal may be liable for a violation of the FCRA by an agent under the theory of apparent authority.

### B. Compatibility with the FCRA

In the absence of specific language regarding the imposition of vicarious liability based on apparent authority, we must consider whether an apparent authority theory is consistent with Congress's intent behind the FCRA. Protecting consumers from the improper use of credit reports is an underlying policy of the FCRA. An apparent authority theory is in keeping with the

FCRA's underlying deterrent purpose because employers are in a better position to protect consumers by use of internal safeguards. *See Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir.1987) (affirming an employer's liability under the FCRA for employee's wrongful actions where employee-agent acted with apparent authority in improperly obtaining a credit report); *see also ASME*, 456 U.S. at 572–73, 102 S.Ct. 1935 (finding an apparent authority rule consistent with the statutory goal of deterring antitrust violations); *Atlantic Fin. Mgmt.*, 784 F.2d at 32 (noting in the context of interpreting a securities statute that "imposing [apparent authority] ... liability will encourage corporate officials to prevent unauthorized (but 'apparently authorized') misrepresentations, thereby helping to achieve an important ... purpose [of the statute]"); *Petro–Tech, Inc. v. Western Co. of No. Am.*, 824 F.2d 1349, 1356 (3d Cir.1987) (noting applicability of common law doctrines in application of federal statutes when common law principles advance the goals of the particular federal statute). Because application of the apparent authority doctrine advances the FCRA's goals and produces no inconsistencies with other FCRA provisions, we conclude that such a theory of liability is an appropriately operative theory of liability under the statute.

Failure to impose vicarious liability on a corporation like Federated would allow it to escape liability for "willful" or "negligent" violations of the statute. Because a company like Federated can act only through its agents, it is difficult to imagine a situation in which a company would ever be found to have willfully violated the statute directly by obtaining a credit report for an impermissible purpose. The FCRA's deterrence goal would be subverted if a corporation could escape liability for a violation that could only occur because the corporation cloaked its agent with the apparent authority to request credit reports.

If the trier of fact finds that Federated created an appearance of authority that caused the credit reporting agency reasonably and prudently to believe that Caylor had made a proper request for a permissible purpose, and that there was reliance on Cay-lor's apparent authority, *see Restatement (Second) Agency* § 219(d)(2), at p. 481 (1958), then it may find Federated liable for negligent or willful violations of the FCRA. Based on our conclusion that the apparent authority rule applies to the FCRA, we now turn to an examination of whether the district court erred in its jury instruction on the negligent violation claim and whether the district court erred in granting a directed verdict to Federated on the willful violation claim.

## III.

### A. Jury Instruction

■ We review jury instructions as a whole to determine whether they fairly and adequately submitted the issues and applicable law to the jury. *See United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir.1991). A party is not entitled to a new trial based upon alleged deficiencies in the jury instructions unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law. *See Bowman v. Koch Transfer Co.*, 862 F.2d 1257, 1263 (6th Cir.1988). Because the correctness of jury instructions is a question of law, we review de novo a district court's jury instructions. *See United States v. 37.29 Pounds of Semi–Precious Stones*, 7 F.3d 480, 486 (6th Cir. 1993).

The district court provided the following jury instruction regarding vicarious liability under the FCRA.

In considering whether Defendant Federated Financial is liable to plaintiff in any of the ways claimed by plaintiff, you may consider whether Janice Caylor, in acquiring plaintiff's credit report was acting in Federated's interest or in her own interest or those of Randy Lind. An employer is liable for the acts of its employee if the employee is acting within the scope of her employment.

However, an employer is not liable for the acts of its employee if the employee does the act while engaged in the employer's work, but outside of her authority, as where she steps outside of her employment to gratify some personal animosity or to accomplish some purpose of her own.

However, you may find Federated Financial to be liable, despite the fact that you find Caylor's actions were outside the scope of her authority, if you find that Federated Financial was negligent in allowing Janice Caylor to obtain a copy of plaintiff's credit report.

J.A. at 558–59. In delivering the above instruction, the district court judge rejected Jones's proposed jury instruction, which would have imputed liability to Federated for Caylor's conduct if Caylor had apparent authority to request credit reports.

The first two paragraphs in the above-quoted instruction are incorrect because they essentially state a *respondeat superior* rule. But even the last paragraph is not an appropriate apparent authority instruction, as it requires an independent finding of negligence. Under a proper apparent authority instruction, neither Caylor's motive for seeking the credit report nor Federated's negligence would have been relevant to Federated's possible liability. Instead, the relevant inquiry for the fact-finder would have been whether Federated manifested to third persons Caylor's apparent authority to act for it and whether there was reliance on this apparent authority. *See Restatement (Second) Agency* § 8 at p. 30 (1958); *Id.* § 219(2)(d) at p. 481; *see also, e.g., Minskoff v. American Express Travel Related Servs. Co., Inc.*, 98 F.3d 703, 708 (2d Cir.1996) (noting that existence of apparent authority is question of fact). If so, then Federated would have been liable to Jones for Caylor's actions.

For the foregoing reasons, the district court erred by refusing to include an apparent authority jury instruction. Accordingly, we remand for a new trial on Jones's claim that Federated is liable for a negligent violation of the FCRA.

**B. Directed Verdict**

■ Similarly, Jones argues that the district court also erred in granting Federated's motion for a directed verdict on the issue of whether Federated willfully violated the FCRA. We review the grant of a directed verdict de novo, using the same test as the district court. *Lewis v. City of Irvine*, 899 F.2d 451, 454 (6th Cir.1990). In other words, we must determine whether sufficient evidence was presented to raise a material issue of fact for the jury. *Jewell v. CSX Transp., Inc.*, 135 F.3d 361, 362 (6th Cir.1998). A directed verdict is proper only when no reasonable juror could find for the nonmoving party. *Id.*

■ The district court's reasoning that Federated could not be vicariously liable for Caylor's willful noncompliance with the FCRA was based on the same erroneous analysis which prompted the district court to reject the jury instruction on apparent authority relating to Jones's negligent noncompliance claim. Because the evidence supported a finding that Caylor acted willfully, and because, as explained above, Caylor's actions may be imputed to Federated under the apparent authority doctrine, reasonable jurors could have found Federated liable for a willful violation of the FCRA. Accordingly, the district court improperly awarded a directed verdict to Federated on this issue. We therefore reverse the district court's award of a directed verdict to Federated on the issue of whether it willfully failed to comply with the FCRA and remand this claim.

**C. Motion for a New Trial**

Jones argues that she did not receive a fair trial and that the jury's verdict was not supported by the evidence. Because we are remanding for a new trial on both the negligence and willful noncompliance claims, we need not reach these issues.

**D. Exclusion of Expert Testimony**

Because the judgment below is vacated and the case is remanded for a new trial, we need not address the question of whether the district court committed reversible error by excluding Jones's proffered expert testimony. Jones will have another opportunity to proffer her expert's testimony in a new trial. At that time, the district court may again make an evidentiary determination.

**IV.**

For the foregoing reasons, we REVERSE the district court's grant of a directed verdict as well as the jury's verdict and REMAND

to the district court for further proceedings consistent with this opinion.