# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

———————

No. 97-3267

———————

| | | |
|---|---|---|
| Johnny L. Bakker, Teresa Bakker, Carrie Ann Bakker, | * * * | |
| Appellees, | * * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas |
| Laura J. McKinnon, | * * | |
| Appellant. | * | |

———————

Submitted:  March 11, 1998

Filed:  August 21, 1998

———————

Before McMILLIAN, FAGG and BOWMAN,[1] Circuit Judges.

———————

McMILLIAN, Circuit Judge.

————————————

[1] The Honorable Pasco M. Bowman succeeded the Honorable Richard S. Arnold as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on April 17, 1998.

Laura J. McKinnon, an attorney, appeals from a final judgment entered in the United States District Court[2] for the Western District of Arkansas, following a bench trial, finding that she had intentionally and willfully violated the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. § 1681 et seq. Bakker v. McKinnon, Civil No. 96-5112 (W.D. Ark. July 21, 1997) (mem. op.). The district court awarded to each appellee, Dr. Johnny L. Bakker and his two daughters, Teresa Bakker and Carrie Ann Bakker, $500 in compensatory damages and $5,000 in punitive damages. For reversal, appellant contends that the district court erred in finding that she violated the FCRA and in awarding an unreasonable amount for punitive damages.

The district court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question). This court has jurisdiction pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a). For the reasons given herein, we affirm the judgment of the district court.

I

In September 1996 appellees Dr. Johnny L. Bakker, who is a dentist, and his adult daughters, Teresa Bakker and Carrie Ann Bakker, filed this lawsuit alleging that appellant had requested several consumer credit reports about them from a local credit bureau in violation of the FCRA. Appellant represents several women patients of Dr. Bakker who claimed that Dr. Bakker had committed dental malpractice by improperly touching them during the course of dental treatments. Appellant filed lawsuits in state court on behalf of these women against Dr. Bakker.

The district court found that appellant and her associates had engaged in numerous acts which, in the district court's view, "grossly crossed the line in respect

---

[2]The Honorable H. Franklin Waters, United States District Judge for the Western District of Arkansas.

to what is proper in conducting litigation." Mem. op. at 2 (footnote omitted). Basically, the district court concluded that appellant and her associates had requested the credit reports as part of the litigation process to force a settlement. Id. at 3-9. The district court noted that a speaker at a meeting of the Arkansas Trial Lawyer's Association (of which appellant was a member of the board of governors and a former president) had recommended that consumer credit reports be routinely obtained against defendants or prospective defendants. Id. at 7.

Appellant admitted that she (or, more precisely, someone in her office) obtained the credit reports, but she argued that (1) she obtained them for a commercial or a professional purpose and, thus, the credit reports were not consumer credit reports within the meaning of the FCRA, 15 U.S.C. §§ 1681a(d), 1681b, or (2) in the alternative, assuming the credit reports were consumer reports within the meaning of the FCRA, she had a legitimate business need for requesting them, id. § 1681b(3)(E). Dr. Bakker's attorney had informed appellant that CNA Insurance Co. was defending Dr. Bakker under reservation of rights letters. Appellant testified that she obtained the credit reports about Dr. Bakker and his daughters in order to determine whether he was judgment proof and whether he was transferring his assets to his daughters. Appellant filed a motion for summary judgment, alleging that the credit reports were not consumer reports or, in the alternative, they were obtained for a legitimate business need. The district court denied the motion for summary judgment, holding that the credit reports were consumer reports within the meaning of the FCRA. Order at 5-7 (Apr. 25, 1997) (order denying defendant's motion for summary judgment). The district court decided that the key is the purpose for which the information was collected, not the use to which the information contained therein is put. Id. at 6, citing St. Paul Guardian Ins. Co. v. Johnson, 884 F.2d 881, 883 (5th Cir. 1989) (St. Paul Guardian). Here, the credit reports apparently consisted primarily of a listing of outstanding credit card and similar debts. Mem. op. at 9. The district court also rejected appellant's legitimate business need argument because she and appellees were not involved in a business transaction within the meaning of the FCRA. Order at 7. The district court rejected the "broad"

interpretation of "business transaction" and instead limited "business transaction" to consumer credit, insurance or employment transactions. Id.; see Ippolito v. WNS, Inc., 864 F.2d 440, 451 (7th Cir. 1988), cert. dismissed, 490 U.S. 1061 (1989). The district court also noted that appellant's reason for obtaining the credit reports was not a "business need" within the meaning of the FCRA because "[d]etermining whether an adverse party in litigation will be able to satisfy a judgment is plainly a purpose unrelated to 'an individual's eligibility for credit, insurance or employment.'" Order at 8, citing Mone v. Dranow, 945 F.2d 306, 308 (9th Cir. 1991) (per curiam) (citing cases).

Before trial, the district court had advised the attorneys that, in light of its previous rulings, the only issue left for trial was damages. Mem. op. at 12. Appellees testified about how appellant's wrongful requests for their credit reports had violated their privacy. The district court found that appellant and her associates had willfully violated the FCRA, 15 U.S.C. § 1681q, by requesting consumer reports on appellees in "a blatant attempt to extract a settlement from the insurance carrier for Dr. Bakker by whatever means were at hand." Id. at 14. The district court characterized the multiple requests for credit reports as part of a "vendetta" pursued by appellant and her associates against Dr. Bakker and his family to harass and coerce them into settling the litigation. The district court awarded each appellee actual damages in the amount of $500 and punitive damages in the amount of $5,000. Id. at 16-17. Subsequently, the district court awarded appellees attorney's fees and costs. Order at 1-2 (Aug. 12, 1997) (order granting plaintiffs' motion for attorney's fees and costs). This appeal followed.

II

Appellant first argues that the district court erred in denying her motion for summary judgment because she did not violate the FCRA as a matter of law. Although we do not believe appellant properly preserved this issue for appellate review, we need

-4-

not decide that issue because the denial of summary judgment is interlocutory in nature and not appealable after a full trial on the merits; judgment after a full trial on the merits supersedes earlier summary judgment proceedings. Metropolitan Life Ins. Co. v. Golden Triangle, 121 F.3d 351, 354 (8th Cir. 1997), citing Johnson Int'l Co. v. Jackson Nat'l Life Ins. Co., 19 F.3d 431, 434 (8th Cir. 1994).

III.

Appellant argues the district court erred in finding that she violated the FCRA. Appellant argues she requested the credit reports in the course of a commercial or professional transaction, that is, in her capacity as an attorney representing clients in litigation, and not in connection with any type of consumer transaction involving appellees' credit, insurance or employment. Appellant argues that credit reports obtained in connection with commercial or professional transactions are not covered by the FCRA. Appellant also argues that there was no evidence that she obtained the credit reports under false pretenses. In the alternative, appellant argues that, assuming for purposes of analysis that the credit reports are consumer reports within the meaning of the FCRA, she did not violate the FCRA because she had a legitimate "business need" for obtaining them within the meaning of 15 U.S.C. § 1681b(3)(E). We do not agree.

The underlying facts are not substantially disputed. Whether the credit reports were consumer reports and, if so, whether the business need exception applies are questions of statutory interpretation of the FCRA. The district court found that appellant had engaged in numerous acts, which in its view, grossly crossed the line in respect to what is proper in conducting litigation; during the litigation against Dr. Bakker, appellant had attempted to "dig up as much dirt" as possible about appellees without regard to its relevance; appellant had threatened to destroy and ruin Dr. Bakker's dental practice through litigation and publicity; and appellant had improperly accused Dr. Bakker of being a child molester. Mem. op. at 2-8 (citing letters dated

January 23, 1992, and February 14, 1992). The district court found that appellant's reason for obtaining the credit reports was a blatant attempt to coerce a settlement from Dr. Bakker's insurance carrier.

When appellant obtained the credit reports in September 1995 and April 1996, 15 U.S.C. § 1681b(3) provided in part that

> any consumer reporting agency may furnish a consumer report under the following circumstances and no other:
>
> . . . .
>
> (3) To a person which it has reason to believe--
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or
> (B) intends to use the information for employment purposes; or
> (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or
> (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality required by law to consider an applicant's financial responsibility or status; or
> (E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

In 1996 § 1681b was amended and the "business need" exception was renumbered as § 1681b(a)(3)(F). That subsection now provides that a party may obtain a report if it "otherwise has a legitimate business need for the information–– (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." Consumer Credit Reform Act of 1996, Pub. L. No. 104-208, § 2403, 110 Stat. 3009, 3009-430 (1996). Because the 1996 amendment does not apply here (its effective date was 365 days after September 30, 1996), our statutory analysis

does not consider it.  See Duncan v. Handmaker, No. 96-6523, 1998 WL 292256, at *2 n.3 (6th Cir. June 8, 1998) (noting 1996 amendment arguably restricts scope of business need exception), citing Northrop v. Hoffman of Simsbury, Inc., 134 F.3d 41, 45 n.5 (2d Cir. 1997).

Appellant testified that she obtained the credit report on Dr. Bakker seeking information concerning his ability to satisfy a judgment if the parties settled the underlying litigation.  She admitted that the first credit report did not contain any such information.  Yet, she subsequently obtained a second credit report on Dr. Bakker and his two daughters.  Her explanation for obtaining credit reports on Dr. Bakker's daughters was to see if Dr. Bakker was transferring assets to his daughters.  Appellant gave no explanation why she thought the later reports might provide helpful information even though the earlier report had not done so.  Mem. op. at 9-10.

Appellant argues that, because she obtained the credit reports in connection with the underlying litigation against Dr. Bakker, they were obtained for a commercial or professional use and not in connection with a consumer transaction.  Thus, she contends that the credit reports are not consumer reports covered by the FCRA.  The district court rejected this argument, holding that appellant's alleged purpose did not alter the fact that the credit reports in question were consumer reports within the meaning of the Act.  Order at 5.  The definition of "consumer reports" under the Act is "limited to information that is 'used or expected to be used or collected' in connection with a 'business transaction' involving one of the 'consumer purposes' set out in the statute, that is, eligibility for personal credit or insurance, employment purposes, and licensing."  Ippolito v. WNS, Inc., 864 F.3d at 451.

We hold that, regardless of appellant's intended use of the credit reports, these reports are consumer reports within the meaning of the FCRA because the information contained therein was collected for a consumer purpose.  Under the FCRA whether a credit report is a consumer report does not depend solely upon the ultimate use to

which the information contained therein is put, but instead, it is governed by the purpose for which the information was originally collected in whole or in part by the consumer reporting agency. St. Paul Guardian, 884 F.2d at 883-84.

> In other words, even if a report is used or expected to be used for a non-consumer purpose, it may still fall within the definition of a consumer report if it contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose.

Ippolito v. WNS, Inc., 864 F.3d at 453. Furthermore, appellant's contract with the Credit Bureau of Fayetteville/Springdale indicated that the reports were subject to the Act and that she agreed that she would only request the information when she intended to use the information in relation to consumer purposes identical to those set out in the Act, i.e., eligibility for personal credit or insurance, employment purposes and licensing or a business transaction involving the consumer.

Next, appellant contends pursuant to § 1681b(3)(E) that she had a legitimate business need for the credit reports. Appellees, of course, argue that appellant failed to articulate a legitimate business need within the Act's exception. We hold that appellant cannot be said to have a legitimate business need within the meaning of the Act unless and until she can prove or establish that she and appellees were involved in a business transaction involving a consumer. In order to be entitled to the business need exception found in § 1681b(3)(E), the business transaction must relate to "a consumer relationship between the party requesting the report and the subject of the report" regarding credit, insurance eligibility, employment, or licensing. Houghton v. New Jersey Mfrs. Ins. Co, 795 F.2d 1144, 1149 (3d Cir. 1986). Appellant admits that she and appellees were not involved in any consumer transaction involving the extension of credit, insurance, employment, or licensing. Thus, no consumer relationship existed between appellant, the party requesting the reports, and appellees, the subjects of the reports, and the business need exception did not apply. We also

reject appellant's argument that , as an attorney representing clients in litigation, she had a business need to obtain credit reports on the opposing parties. See Duncan v. Handmaker, 1998 WL 292256, at *2-3; cf. Mone v. Dranow, 945 F.2d at 308 (employer's obtaining credit report for purpose of determining whether employee would be able to satisfy judgment was not for lawful purpose).

Finally, we consider appellant's argument that the punitive damages award was unreasonable. Title 15 U.S.C. § 1681q provides criminal penalties for knowingly and willfully obtaining a credit report under false pretenses. A violation of this criminal statute is a violation of any requirement imposed under the subchapter within the meaning of §§ 1681n and 1681o. Hansen v. Morgan, 582 F.2d 1214, 1218 (9th Cir. 1978) (violation of § 1681q forms a basis of civil liability under §§ 1681n and 1681o). Therefore, obtaining a credit report under false pretenses creates civil liability under the FCRA. Where civil liability exists because of a willful failure to comply with the requirements of the Act, the consumer may recover (1) any actual damages sustained by the consumer as a result of the failure; (2) such punitive damages as the court may allow; and (3) in the case of any successful action to enforce liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court. 15 U.S.C. § 1681n(a).

Therefore, the question becomes whether the evidence showed that appellant's and her associates' conduct in obtaining the reports was willfully done. "To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.'" Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997), citing Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d Cir. 1996) (citing Pinner v. Schmidt, 805 F.2d 1258, 1263 (5th Cir. 1986), cert. denied, 483 U.S. 1022 (1987)); accord Thornton v. Equifax, Inc., 619 F.2d 700, 705 (8th Cir.), cert. denied, 449 U.S. 835 (1980). In Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829 (8th Cir. 1976) (O'Hanlon), an opinion written by Associate Justice Tom

C. Clark, sitting by designation, the credit reporting agency had produced a report on the plaintiff which was filled with inaccuracies. There was evidence that the defendant's agent did a sloppy job because he had only devoted, at most, 30 minutes to prepare the report. Justice Clark concluded that the defendant had willfully violated both the spirit and the letter of the FCRA by "trampling recklessly" upon the plaintiff's rights thereunder, upheld the recovery of damages for "mere mental pain and anxiety," and also held that the trial court was acting within its discretion when it awarded punitive damages. Id. at 834-35. "Actual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 972 (4th Cir. 1987) (noting an award of punitive damages in the absence of any actual damages, in an appropriate case, comports with the underlying deterrent purpose of FCRA).

Here, the district court found that at the very early stages of the underlying litigation, appellant and her associates set out upon a course of conduct, which in the words of O'Hanlon, 528 F.2d at 835, "willfully violated both the spirit and the letter of the Fair Credit Reporting Act . . . by trampling recklessly upon [appellees'] rights thereunder." That conduct was obviously a blatant attempt to extract a settlement from Dr. Bakker's insurance carrier, without regard to whether such conduct was fair or a clear violation of Rule 4.4 of the Arkansas Rules of Professional Conduct.

The district court further found that appellant intentionally and egregiously threatened Dr. Bakker with loss of his profession, both by the destruction of his name and by forfeiture or suspension of his dental license. Appellant's conduct included allegations that Dr. Bakker and his wife had been involved in child molestation matters, allegations that could have had a devastating effect upon their lives even if false. Finally, the district court found that appellant's multiple requests for credit reports on Dr. Bakker and his daughters were designed and intended to carry on the "vendetta" that appellant's law firm pursued against appellees.

While it is true that appellees were not able to produce any actual out-of-pocket expenses or costs incurred as a result of appellant's willful conduct, appellees testified about how they felt when appellant obtained their credit reports and violated their privacy, thereby causing them some emotional distress. We hold that the district court did not abuse its discretion in awarding appellees actual and punitive damages.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.