297 F.Supp.2d 1196 (2003)
Gregg ZOTTA, et al., Plaintiffs,
v.
NATIONSCREDIT FINANCIAL SERVICES CORP., et al., Defendants.
No. 4:02 CV 1650 DDN.
United States District Court, E.D. Missouri, Eastern Division.
December 22, 2003.
*1197 Blair K. Drazic, Blair K. Drazic, P.C., Creve Coeur, MO, for Plaintiffs.
Allen S. Boston, Michael J. Hickey, Keith J. Grady, Lewis and Rice, St. Louis, MO, James B. Dodd, Jacksonville, FL, Dustin B. Rawlin, Jones and Day, Cleveland, OH, Michael J. Pitzer, Sr., Jarrett T. Applegate, Rabbitt and Pitzer, G. Carroll Stribling, Jr., Husch and Eppenberger, LLC, St. Louis, MO, Lewis P. Perling, Kilpatrick Stockton LLP, Atlanta, GA, for Defendants.

MEMORANDUM
NOCE, United States Magistrate Judge.
This action is before the court upon the summary judgment motions of defendants NationsCredit Financial Services Corp. (NationsCredit) (Doc. 64), Experian Information Solutions, Inc. (Experian) (Doc. 66), and Equifax Credit Information Services, Inc. (Equifax) (Doc. 68), as well as defendants' joint motion to exclude expert testimony (Doc. 75). The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on September 18, 2003.

I. BACKGROUND

A. Plaintiffs' petition
Plaintiffs Gregg Zotta and Marsha Zotta filed a four-count petition on December 20, *1198 2001, in the Circuit Court of St. Louis County, Missouri, asserting violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681, et seq. Defendants removed the action to this court on October 30, 2002. (Doc. 1.) Plaintiffs alleged the following in their petition.
NationsCredit is a "furnisher of information" under 15 U.S.C. § 1681s-2. Experian and Equifax are each a "consumer reporting agency" (CRA) under 15 U.S.C. § 1681a(f). Experian and Equifax issued reports that constitute consumer reports under the FCRA. They both inaccurately reported to one or more creditors, including The Austin Group, that plaintiffs had a mortgage account with NationsCredit that was paid one or more times late as "plus thirty." Plaintiffs instituted a consumer dispute with Equifax and Experian, which in turn contacted NationsCredit regarding the dispute. (Doc. 1 unnumbered attach. at 1-3.)
In Count I, Gregg Zotta alleges defendants negligently violated the FCRA. Specifically, he contends that, when contacted by Equifax and Experian, NationsCredit responded that plaintiffs' loan was current at the time of the dispute but had been delinquent during "99." Next, he alleges NationsCredit did not investigate or failed to conduct a reasonable investigation in that he had previously complained to it and it generated a document that said plaintiffs' payments were timely. Mr. Zotta asserts defendants failed to have reasonable procedures to insure maximum possible accuracy of the information disseminated concerning him. He alleges they both reported the "plus thirty" after a reasonable time following the receipt of the Universal Data Form (UDF) whereby NationsCredit directed defendants to remove "any delinquencies" from his file, because the late reports were the fault of the creditor due to "our error" and "no fault of customer." Moreover, he asserts that Experian negligently failed to conduct a reasonable investigation after receiving notice of a consumer dispute from plaintiffs and continued reporting the account as "plus thirty" and did not notify other credit bureaus of the inaccuracy. Further, he alleges that as a result of defendants' negligence his credit was reported incorrectly and his "credit standing was and will in the future be damaged and destroyed," causing him to sustain denials of credit, emotional distress, and expenses. He also alleges that "said report" caused him to lose a real estate loan with The Austin Group and incur unnecessary interest charges on a higher interest loan, and that he will suffer future deterioration in his credit rating because of an inability to make the higher house payments. He seeks compensatory damages in this count. (Id. at 3-4.)
In Count II, Mr. Zotta seeks compensatory and punitive damages for willful violation of the FCRA. He asserts Experian and Equifax willfully failed to comply with the FCRA because, having received a consumer dispute from plaintiffs and having previously received a UDF from the creditor, they recklessly failed to investigate or reasonably investigate that the account was reported delinquent notwithstanding the creditor's previous acknowledgment of its own mistake to "Defendant." He asserts NationsCredit willfully violated the FCRA because, having previously investigated a direct dispute from plaintiffs and generated a UDF from the bureaus, it acted recklessly with regard to investigating. He repeats the language from Count I describing the harm he has suffered and will suffer. (Id. at 4-6.)
Count III largely mirrors Count I but involves Marsha rather than Greg Zotta. (Id. at 6-8.) Similarly, Count IV parallels Count II but involves Marsha. (Id. at 8- *1199 9.) On October 30, 2002, defendants removed the action to this court. (Doc. 1.) Plaintiffs' petition does not allege the specific date or time period of any of defendants' actions or failure to act.
Several documents are attached to plaintiffs' petition and are also found elsewhere in the record. A November 18, 1999 letter to Mr. Zotta from "Customer Service" at NationsCredit advises him that a UDF will be submitted to various credit reporting depositories, such as Equifax and Experian, advising them "to correct any inaccurate history" which may have been reported on his account. (Id. Ex. 1.) On November 18 Ed Wulbern, a researcher with NationsCredit, signed a form regarding Greg Zotta and subscriber NationsCredit. Wulbern checked a "Change" box and wrote, "[p]lease remove any delinquencies from this account, due to our error (with statements) and no fault of customer." (Id. Ex. 3.) In a November 19, 1999 memorandum concerning Mr. Zotta, Wulbern wrote to a person identified as "Grant," [t]his is to confirm that due to a situation beyond the customer's control," NationsCredit had adjusted Mr. Zotta's account "from being 30/60 days rolling delinquency to zero delinquencies for any time during 1999." (Id. Ex. 2.)
In a February 11, 2000 letter to Experian, Greg Zotta wrote,
I was recently declined a credit card from Next Card Visa because of adverse information on my credit report which is inaccurate and needs to be corrected immediately. The Experian credit report states that I was 30 days late in paying my mortgage 11-1999, and 10-1999, with Nations Credit. I have never paid late. Nations Credit was in error reporting the delinquency. Ed Wulbern, a supervisor with Nations Credit Research Department, said he would correct the error, and would be sending out a[UDF] to all the credit bureaus including your company. I am enclosing copies of the correspondence I received from Ed Wulbern to corroborate my contention that I was not late and this adverse information needs to be removed from my file immediately.
(Id. Ex. 4.) Mr. Zotta added that he planned to refinance his property and that if the incorrect information was not removed from his file he would be damaged financially. (Id.)
On February 25, 2000, "Barbara Jackson" signed a Consumer Dispute Verification (CDV) form regarding Mr. Zotta that had been sent to NationsCredit by Experian. The CDV listed the NationsCredit loan as "OPEN/CUR WAS 30-2 02/03/00." Written next to an unchecked "Change Data As Shown" box were the words "loan was delinquent during `99', now current." (Id. Ex. 7.)
A March 10, 2000 "Correction Summary" prepared by Experian for Mr. Zotta shows that five items, including NationsCredit information about him, were "reinvestigated." Four of the items had outcomes of "Deleted" or "Updated," but the NationsCredit information "Remain[ed]." The comment section of Experian's report (1) described the NationsCredit account's status as "open/current, was past due 30 days"; (2) reflected an account history as "30 days as of 11-1999, 10-1999"; (3) indicated that as of September 2005 the account "was scheduled to go to a positive status"; (3) stated, "CONSUMER STATES WAS NEVER LATE"; and (4) concluded, "[t]his item was verified and updated on 3-2000." (Id. Ex. 6.)
After answering separately and raising affirmative defenses, including that plaintiffs' claims were time-barred (Docs.14, 19, 28), defendants each moved for summary judgment.

*1200 B. NationsCredit
NationsCredit moves for summary judgment, arguing, as to Counts I and III, that plaintiffs failed to create a genuine issue of material fact (1) that NationsCredit breached its limited duties as a furnisher of information under § 1681s-2(b) and (2) that its investigation under the FCRA was the proximate cause of their alleged injuries. Consequently, it argues that summary judgment also must be granted on plaintiffs' willful-violation claims, Counts II and IV. Finally, NationsCredit argues that summary judgment should be granted on all counts because plaintiffs cannot establish actual damages resulting from the alleged FCRA violations, i.e., their allegations of emotional distress are based solely on their own testimony and lack medical corroboration, and that they are not entitled to any punitive damages. (Doc. 64.)
Plaintiffs respond that (1) they are not required to demonstrate credit denials, (2) in any event, they have evidence of credit denials, i.e., Mary Elliott's deposition testimony, (3) a fact issue is made on the willfulness of defendant's cursory investigation procedures. According to plaintiffs, "NationsCredit's defense is that [its] loan department is so reckless in correcting credit reports that someone later conducting a reasonable investigation could reasonably be expected to find no trace of [Wulbern]'s attempts at correction." (Doc. 70.)
Plaintiffs proffer a deposition transcript in which Wulbern testified that he was not aware of direct evidence that the UDF he completed was sent to any CRA, but he indicated that it would have been his practice and procedure to send the form to NationsCredit's operations center, where the practice and procedure was to send it on to the three CRAs. (Doc. 71 Wulbern Dep. at 14, 18.)
NationsCredit replies that plaintiffs' objection to its conduct prior to notice of the dispute in February 2000 is not actionable under the FCRA. Next, NationsCredit argues that summary judgment is appropriate on Counts I and III on the issue of proximate cause under the FCRA, because plaintiffs rest their case on the testimony of one person, Mary Elliott, who does not qualify as an expert under Federal Rule of Evidence 702.[1] (Doc. 76.)

C. Experian
In its summary judgment motion, Experian argues that plaintiffs have no evidence they were denied credit, given that they have not produced an adverse action letter or any admissible evidence from any credit grantor that they applied for or were denied credit. Next, Experian argues that, even if plaintiffs were denied credit, they have no evidence that a credit grantor relied on a report of Experian, as opposed to another CRA. It also argues that they have no evidence they were denied credit due to inaccuracies in an Experian report rather than correct adverse entries or other *1201 factors, e.g., insufficient income or high revolving credit balances. As to emotional distress, Experian argues that plaintiffs have no evidence of credit denial or actual injury. (Doc. 66 at 2-10.)
Alternatively, Experian asserts that it complied with the FCRA's requirements regarding the reinvestigation of consumer disputes under 15 U.S.C. § 1681i. Experian claims that its duty to investigate was triggered by Greg Zotta's February 17, 2000 telephone dispute and that plaintiffs have no evidence that it received a February 11, 2000 dispute letter allegedly sent by Greg Zotta.[2] Experian states that plaintiffs' only basis for alleging that Experian should have updated the NationsCredit account upon receiving the UDF is that Mr. Zotta received the UDF from NationsCredit and assumed NationsCredit had sent one to Experian. Experian asserts, however, that it never received the UDF from NationsCredit and points out that NationsCredit has no evidence of sending the form to Experian. Moreover, Experian notes that NationsCredit continued to report to Experian that plaintiffs' account was 30 days late in October and November 1999, and repeatedly verified that information to Experian. Experian also argues that plaintiffs have no evidence of willfulness so as to justify punitive damages. (Id. at 10-18.)
Finally, Experian seeks dismissal of Marsha Zotta's claims because she "has no knowledge whatsoever regarding this case, her claims, or Experian's purported involvement." Specifically, Experian indicates that she admitted she has not read the complaint or any documents related to this litigation, she never contacted Experian, she never saw a copy of her Experian credit report, and she has no idea if she has been denied credit or the cause of such denial. Additionally, Experian argues that she cannot survive summary judgment (1) on her § 1681i reinvestigation claim because she never disputed any account on her credit report to Experian, or (2) on her § 1681e(b) reasonable-procedures claim because she never notified Experian that the NationsCredit account was potentially inaccurate. (Id. at 18-20.)
In response, plaintiffs repeat many arguments from their response to NationsCredit's summary judgment motion. Additionally, they maintain Mr. Zotta's testimony that he sent the February 11, 2000 letter is evidence of receipt. Similarly, they maintain Wulbern's testimony that he put the UDF into NationsCredit's system that had the habit and custom of forwarding it to Experian is sufficient proof of receipt. Plaintiffs assert that even though Marsha did not ask for an investigation, credit bureaus are still required to have reasonable procedures to assure maximum possible accuracy of their reports. They refer to the UDF sent on Mr. Zotta and note that he contested the information. They add that Mrs. Zotta "suffered emotional distress from the financial circumstances and denials," and conclude that at least enough exists to make a fact issue for a violation of § 1681e(b). (Doc. 72.)
Experian replies that plaintiffs' "new claim" that they suffered emotional distress ostensibly upon viewing their Experian credit disclosure is barred because FCRA liability is not triggered by an error in a "consumer disclosure." Experian distinguishes a "consumer disclosure" from a "consumer report" and maintains that credit reporting agencies only have liability with respect to consumer reports sent *1202 to a third-party user of information. Next, Experian asserts plaintiffs have no proof their emotional distress was caused by Experian and have insufficient evidence of emotional distress damages. Experian also asserts plaintiffs have no evidence that its reinvestigation was lacking, i.e., no evidence that it received any of their alleged other disputes or that it received a UDF from NationsCredit. (Doc. 78.)

D. Equifax
In its summary judgment motion, Equifax argues that (1) plaintiffs have sued the wrong party because CSC Credit Services owned and maintained their credit files; (2) their claim is barred by the FCRA's two-year statute of limitations because they filed suit in October 2002 and alleged that Equifax failed to update its credit files in November 1999; (3) even if Equifax were a proper party, it did not violate the FCRA because plaintiffs cannot show that its system or procedures were unreasonable and that it was on notice; and (4) the evidence is insufficient to award punitive damages. (Doc. 68.)
Plaintiffs reply that the "owner" of their Equifax data is insignificant so long as Equifax trades on that data. They suggest the "apparent authority" theory of tort liability applies to the FCRA. Next, they contend this action is timely because they are suing Equifax for preparing an inaccurate report in early 2000, and not for failing to update its database in November 1999. The year 2000 report was inaccurate, they submit, because of Equifax's violation of § 1681e(b). Regarding § 1681e(b), plaintiffs believe a question of fact exists given that "NationsCredit informed Equifax that the information was inaccurate and in all probability reported the bad information again later (emphasis added)." They also maintain the facts support the inference that Equifax received the UDF and later reported conflicting negative information in 2000. Finally, plaintiffs concede they have insufficient evidence of Equifax's willfulness. (Doc. 71.)
Equifax replies that no evidence supports plaintiffs' argument that it is liable on a theory of apparent authority and agency, and that no case law supports a theory that apparent authority creates agency under their claims for violation of the FCRA. Next, Equifax contends the action that plaintiffs allege gives rise to liability is Equifax's failure to update per a UDF allegedly sent in October 1999. Thus, Equifax maintains that the filing of this suit in December 2001 still occurred more than two years after the claim arose. Equifax next argues that plaintiffs' assertion that an inference may be made that it received a UDF and later reported conflicting negative information does not satisfy their burden to show how, if at all, Equifax's procedures were not reasonable under § 1681e(b). Finally, Equifax notes that plaintiffs did not address its argument regarding notice. (Doc. 74.)

II. DISCUSSION

A. Legal framework
A motion for summary judgment should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "In deciding whether there is a genuine issue of material fact, the court must view all evidence in the light most favorable to the non-moving party and must give that party the benefit of all justifiable inferences." Jenkins v. S. Farm Bureau Cas., 307 F.3d 741, 743 (8th Cir.2002).
In enacting the FCRA, Congress recognized the vital role consumer reporting agencies have in assembling and evaluating *1203 consumer credit, as well as the need to insure that consumer reporting agencies exercise their responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. 15 U.S.C. § 1681(a)(3)-(4). The FRCA, which as relevant has a two-year statute of limitations, see 15 U.S.C. § 1681p, and addresses the duties of CRAs and of furnishers of information to those agencies as follows. "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).
If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with [15 U.S.C. § 1681i(a)(5)[3]], before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.
15 U.S.C. § 1681i(a)(1)(A). Within five days after a CRA "receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person[4] who provided any item of information in dispute, at the address and in the manner established with the person." 15 U.S.C. § 1681i(a)(2)(A). The notice must include all relevant information regarding the dispute that the CRA received from the consumer. Id. In addition, the CRA must promptly provide the furnisher of the information in dispute all relevant information about the dispute that the agency received from the consumer. 15 U.S.C. § 1681i(a)(2)(B).
After receiving notice of a dispute pursuant to § 1681i(a)(2), the provider of information must (A) conduct an investigation with respect to the disputed information, (B) review all relevant information provided by the CRA under § 1681i(a)(2), (C) report the results of the investigation to the CRA, and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. 15 U.S.C. § 1681s-2(b)(1)(A)-(D).[5]
In Bruce v. First U.S.A. Bank, Nat. Ass'n, 103 F.Supp.2d 1135, 1143 (E.D.Mo. 2000), the court noted that the FCRA does not provide any indication as to the level of investigation required under § 1681s-2(b)(1), but it ultimately concluded that the investigation must be reasonable. In reaching this conclusion, the court determined that § 1681s-2(b)'s investigation requirement for entities furnishing credit information is analogous to § 1681i(a)'s reinvestigation requirement imposed upon credit reporting agencies, which courts have interpreted as imposing a duty to conduct a reasonable reinvestigation. *1204 Id. The court then listed factors considered in § 1681i(a) cases: "(1) whether the consumer has alerted the agency that the initial source of the information may be unreliable or if the agency knows or should know that the source is unreliable, and (2) the cost of verifying the accuracy of the source versus the possible harm of reporting inaccurate information." Id.
The FCRA provides consumers with a cause of action for negligent noncompliance with § 1681s-2(b), permitting the recovery of actual damages, costs, and attorney's fees. 15 U.S.C. § 1681o(a)(1)(2). It also imposes civil liability for willful noncompliance in an amount equal to the sum of
(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000 ...
* * * * * *
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.
15 U.S.C. § 1681n(a). To show willful noncompliance with the FCRA, a plaintiff must show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive. Phillips v. Grendahl, 312 F.3d 357, 368 (8th Cir.2002).[6] "Actual damages are not a statutory prerequisite to an award of punitive damages under the [FCRA]." Bakker v. McKinnon, 152 F.3d 1007, 1013 (8th Cir.1998).

B. Mary Elliot's deposition testimony
The deposition testimony of Mary Elliot is inadmissable under Federal Rule of Evidence 702, because she has not been shown to be qualified as an expert, i.e., she lacks the requisite "knowledge, skill, experience, training, or education" and her testimony is not "based upon sufficient facts or data." See Fed.R.Evid. 702 (requirements for testimony by experts). Her testimony is also inadmissible under Federal Rule of Evidence 703, which allows an expert witness to base her testimony on hearsay, provided that the facts or data underlying the expert's conclusions are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." See Mays v. Rhodes, 255 F.3d 644, 648 (8th Cir.2001) (statements found only in inadmissible hearsay may not be considered as evidence for summary judgment purposes); Walker v. Wayne County, Iowa, 850 F.2d 433, 434 (8th Cir.1988) (courts considering a summary judgment motion "may consider only the portion of the submitted materials that is admissible or usable at trial"), cert. denied, 488 U.S. 1008, 109 S.Ct. 791, 102 L.Ed.2d 783 (1989). As already stated, Mary Elliot is not an expert. Even if she were an expert, there is no evidence that experts in the mortgage underwriting industry would reasonably *1205 rely on the oral statements of an unknown representative ("Sue") of a vaguely identified lending institution ("World" or "World Finance") with an unknown address. For these reasons, defendants' joint motion to exclude expert testimony will be granted.

C. NationsCredit
NationsCredit's duty to investigate under § 1681s-2(b)(1) did not arise until it received notice pursuant to § 1681i(a)(2) of a dispute. While there is evidence (i.e., the documents Wulbern generated) that in November 1999 NationsCredit was aware that Greg Zotta had a dispute, the record contains no evidence that NationsCredit "receiv[ed] notice pursuant to section 1681i(a)(2)" until February 25, 2000. Receipt of notice pursuant to § 1681i(a)(2) not mere knowledge of a dispute pursuant to a consumer's complainttriggers the duties set forth in § 1681s-2(b)(1)(A)-(D). Therefore, any allegedly wrongful acts committed by NationsCredit in November 1999 are outside the FCRA's two-year statute of limitations. See 15 U.S.C. § 1681p.
A genuine issue of material fact exists over whether NationsCredit was negligent regarding its duties under § 1681s-2(b)(1). Specifically, the thoroughness of NationsCredit's investigation is at issue, given the evidence of Wulbern's usual practice and procedure regarding disputes. From this evidence, a jury might infer that NationsCredit had a copy of the November 1999 letter when it conducted its investigation the following year. Likewise, the issue of willfulness is open for trial. Thus, Counts I and II survive summary judgment.
As to Counts III and IV, however, there is no evidence in the record that NationsCredit ever received notice of a dispute regarding the completeness or accuracy of any information it had provided regarding Marsha Zotta. Hence, no duty to investigate arose as to her. Summary judgment is appropriate as to NationsCredit on Counts III and IV.

D. Experian
Given the court's ruling concerning the inadmissibility of Mary Elliot's "expert" testimony, the court concludes that plaintiffs have not produced any admissible evidence that they were denied credit. The parties disagree, however, whether the FCRA requires that a consumer must apply for and be denied credit. Defendants cite various out-of-circuit cases, e.g., Casella v. Equifax Credit Information Servs., 56 F.3d 469 (2d Cir.1995), to support their position, whereas plaintiffs cite cases of and within the Eighth Circuit, which although they do not confront the issue directlysuggest that evidence of emotional distress is sufficient to withstand a summary judgment motion and that application for and denial of credit are unnecessary. See Bakker, 152 F.3d at 1013 (failure to produce any actual out-of-pocket expenses or costs incurred as result of defendant's willful conduct did not preclude award of actual and punitive damages for FCRA violations where plaintiffs testified about how they felt when defendant obtained their credit reports and violated their privacy, thereby causing them emotional distress); Millstone v. O'Hanlon Reports, Inc., 528 F.2d 829, 834-35 (8th Cir.1976) (the "much maligned rule" precluding recovery in tort for mere mental pain and anxiety is inapplicable to the FCRA); Bruce, 103 F.Supp.2d at 1144.
Plaintiffs have no evidence that Experian caused them to suffer emotional distress. They have no evidence that an Experian reportas opposed to a trimerge report, which Experian did not issue was seen by a third party. See *1206 Cousin v. Trans Union Corp., 246 F.3d 359, 370 (5th Cir.2001). Finally, plaintiffs have no evidence of willfulness by Experian. Experian provided credit reports upon requests, conducted multiple reinvestigations of the NationsCredit account and others, and added Mr. Zotta's statement that he was never late. Moreover, there is no evidence Experian received Wulbern's information at any time. Therefore, Experian is entitled to summary judgment.

E. Equifax
In light of plaintiffs' concession that Equifax does not own and maintain plaintiffs' credit files (Doc. 71 at 1), the court concludes Equifax is entitled to summary judgment. Plaintiffs' contention that Equifax is liable under the theory of apparent authority is not persuasive. The cases cited by plaintiffs in support of their position, e.g., Jones v. Federated Fin. Reserve Corp., 144 F.3d 961 (6th Cir.1998), are distinguishable from the instant action. In Jones, an employee of a creditor had misappropriated a confidential credit report for personal use. Id. at 963. The Sixth Circuit held that in such instance the principal may be liable for the agent's violation of the FCRA provision regarding permissible use of a report. Id. at 965. Unlike in Jones, here there is no evidence that CSC was acting as an agent of Equifax. Moreover, Jones and the cases this court has uncovered that follow Jones are impermissible-purpose claims against creditors and users of credit information, not §§ 1681e or 1681i claims against CRAs for failure to follow reasonable procedures or failure to investigate. See, e.g., Del Amora v. Metro Ford Sales & Service, Inc., 206 F.Supp.2d 947, 949 (N.D.Ill.2002) (employee of defendant used his position to obtain credit reports on plaintiff); Adams v. Berger Chevrolet, Inc., No. 00C226, 2001 WL 533811, at *1 (W.D.Mich. May 7, 2001) (same).
Even if Equifax were a proper party, plaintiffs have not provided evidence that Equifax's system or procedure were unreasonable and that Equifax was on notice.
For these reasons, Experian and Equifax will be granted summary judgment, whereas NationsCredit's motion for summary judgment will be granted as to Counts III and IV and denied as to Counts I and II. In addition, defendants' motion to exclude expert testimony will be granted. A separate order will be issued herewith.
NOTES
[1] In a pending joint motion to exclude expert testimony of Elliott (Doc. 75), all three defendants seek exclusion of such testimony at summary judgment, trial, or otherwise and to strike all corresponding references in plaintiffs' summary judgment briefs and statements of controverted facts. They argue that Elliott is not qualified through knowledge, skill, expertise, training, or education and that her methodology and data relied upon, i.e., mainly her memory, is unreliable. Further, they argue that plaintiffs are trying to use Elliott to introduce hearsay testimony for the truth of the matter asserted. They maintain that because Elliott admitted she did not know the last name of "Sue," did not know Sue's connection to World Finance, and could not say where World Finance was currently located or, if in existence at all, Elliott is not competent to evaluate the reliability of Sue's hearsay statement to incorporate it in her own opinion. (Doc. 75.)
[2] Experian infers that the February 11 date is not credible, in part because Greg Zotta did not request a copy of his credit report until February 10 and Experian sends personal credit reports to consumers via regular mail. (Doc. 66 at 13 n. 6.)
[3] Section 1681i(a)(5) provides that, if an item of information is found to be inaccurate, incomplete, or unverifiable, the CRA must promptly delete that item from the consumer's file or modify that item, as appropriate, based on the results of the reinvestigation. 15 U.S.C. § 1681i(a)(5).
[4] Corporations, such as NationsCredit, are persons under the FCRA. See 15 U.S.C. § 1681a(b) (defining "person").
[5] If the reinvestigation does not resolve the dispute, the consumer may file a brief statement describing the dispute. 15 U.S.C. § 1681i(b).
[6] The FCRA also addresses the duty of furnishers of information to provide accurate information to CRAs. Specifically, a person shall not furnish any information relating to a consumer to any CRA if the person knows or consciously avoids knowing that the information is inaccurate, nor shall the person furnish information relating to a consumer to any CRA if "(i) the person has been notified by the consumer ... that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A), (B)(i)-(ii). Noncompliance with subsection (a), however, does not create a private right of action. See 15 U.S.C. § 1681s-2(d); Yutesler v. Sears Roebuck & Co., 263 F.Supp.2d 1209, 1210-11 (D.Minn. 2003).