**James DUNCAN, Annette Duncan, Plaintiffs–Appellants,**

v.

**Kenneth S. HANDMAKER, Middleton & Reutlinger, P.S.C., Defendants– Appellees.**

No. 96–6523.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 2, 1997.

Decided June 8, 1998.

Before: NORRIS, SUHRHEINRICH, and CUDAHY,* Circuit Judges.

## OPINION

CUDAHY, Circuit Judge.

■ Information is power, as any good attorney knows. Those who hunger for information often need look no further than to a person's consumer report—which summarizes, among other things, credit history and credit worthiness. Given the value of this data, and the rise of the credit reporting industry, it is not surprising that Congress passed the Fair Credit Reporting Act (FCRA) to regulate consumer reporting agencies and the users of consumer reports. *See generally Hovater v. Equifax, Inc.*, 823 F.2d 413, 416–17 (11th Cir.1987). Nor is it surprising that some individuals seek to capitalize on general language in the FCRA and thereby construe it as allowing them access to the data they desire. In this appeal, the information-seekers—an attorney and his law firm—argue that the FCRA permits them to obtain consumer reports in the course of defending their client against a lawsuit. We conclude, however, that the FCRA does not generally permit consumer reports to be procured for this purpose. We also find genuine issues of fact with respect to whether the attorney and his firm may be held civilly liable for violations of the FCRA.

## I. Background

In 1992, James and Annette Duncan purchased residential property in Bullitt County, Kentucky. The Federal Housing Authority guaranteed the loan and Bankers Mortgage Corporation served as the private lender. Less than a year after the closing, the Duncans learned that their well was contaminated with fecal coliform. Eventually they filed suit against several parties involved in the purchase of the property, including Bankers Mortgage. The Duncans alleged that Bankers Mortgage was negligent because it failed to ensure that the water supply had been inspected prior to extending the loan and closing the transaction.

David B. Mour (argued and briefed), Borowitz & Goldsmith, Louisville, KY, for Plaintiffs–Appellants.

Jennifer L. Robinson (briefed), Douglass C. Farnsley (argued), Stites & Harbison, Louisville, KY, for Defendants–Appellees.

* The Honorable Richard D. Cudahy, Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

Bankers Mortgage employed Kenneth Handmaker to defend against the Duncans' suit. Approximately a year and a half after the action commenced, Handmaker deposed Mrs. Duncan. His questions led the Duncans to suspect that Handmaker had reviewed their consumer reports in preparation for the deposition. Handmaker later affirmed that he had requested and received the Duncans' reports pursuant to a service agreement between his law firm, Middleton & Reutlinger, and Trans Union Corporation, a consumer reporting agency.

■ The Duncans filed suit against Handmaker and Middleton & Reutlinger, alleging a violation of the FCRA, 15 U.S.C. § 1681 *et seq.* Pursuant to § 1681n, the complaint sought to hold the defendants civilly liable for procuring the Duncans' consumer reports under false pretenses.[1] *See* Compl. at ¶¶ 20–21. As a general rule, a person is proceeding under false pretenses when she (1) knowingly and willfully obtains a consumer report for a purpose that is not sanctioned by the FCRA and (2) fails to disclose her true motivation to the consumer reporting agency.[2] *See Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 46 n. 6 (2d Cir.1997); *Zamora v. Valley Fed. Sav. & Loan Ass'n,* 811 F.2d 1368, 1370–71 (10th Cir.1987); *cf. Kennedy,* 747 F.2d at 370 (Wellford, J., concurring).

The district judge granted Handmaker and Middleton & Reutlinger's motion for summary judgment on the ground that they had obtained the reports for a purpose that is permissible under the FCRA. Of course, summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See Tate v. Boeing Helicopters,* 55 F.3d 1150, 1153 (6th Cir.1995). On appeal, we review the district court's grant of summary judgment de novo and consider "the evidence in the light most favorable to the nonmoving party." *Id.*

## II. Permissible Purposes Under the FCRA

■ The defendants obtained the consumer reports to prepare for the Duncans' suit against their client, Bankers Mortgage. Appellees' Br. at 8. The Duncans' complaint alleged that their property was "virtually unmarketable and uninhabitable" because of the contaminated well. In answers to interrogatories, the Duncans further stated that the value of their property had "been reduced to zero." At Mrs. Duncan's deposition, armed at least in part with information from the consumer reports, Handmaker asked Mrs. Duncan whether she described the property as worthless on applications for loans she received subsequent to filing the lawsuit against Bankers Mortgage. Handmaker also questioned Mrs. Duncan about why she did not list an existing mortgage as a contingent liability on her application for the loan from Bankers Mortgage.

Section 1681b of the FCRA lists the purposes for which a party may obtain a consumer report:

1. At the time of the events giving rise to this case, § 1681n provided a civil cause of action against "[a]ny consumer reporting agency or user of information which willfully fails to comply with any requirement under [the FCRA]." In *Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367 (6th Cir.1984), this court concluded that a violation of § 1681q—which criminalizes the act of knowingly and willfully obtaining information under false pretenses from a consumer reporting agency—constitutes a basis for civil liability under § 1681n. In 1996, Congress amended § 1681n to expressly provide a cause of action against a party for "obtaining a consumer report under false pretenses or knowingly without a permissible purpose." Consumer Credit Reform Act of 1996, Pub.L. No. 104–208, § 2412, 110 Stat. 3009, *3009–446 (1996). The amendment does not apply to this case, since it became effective 365 days after September 30, 1996, unless any person or entity complied with any pro-vision before that date. *See* § 2420, 110 Stat. at *3009–453.

2. The amendment discussed in note 1, *supra,* evidently codifies the holding of *Kennedy* by making clear that a civil action is available when a party proceeds under false pretenses. It also may suggest that a person may incur civil liability if (1) she obtains a report for a permissible purpose but for some reason fails to disclose her true motivation to the agency, or (2) she knowingly obtains a report without a permissible purpose, regardless of whether she discloses the impermissible purpose to the consumer reporting agency. *See* § 2412, 110 Stat. at *3009–446 (providing a cause of action for obtaining a consumer report under false pretenses *or* knowingly without a permissible purpose). But because the amendment does not apply to this case, we do not speculate further about its meaning.

A consumer reporting agency may furnish a consumer report under the following circumstances and no other:

. . . .

(3) To a person which it has reason to believe—

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or

(B) intends to use the information for employment purposes; or

(C) intends to use the information in connection with the underwriting of insurance involving the consumer; or

(D) intends to use the information in connection with a determination of the consumer's eligibility for a license . . . or

(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer.

15 U.S.C. § 1681b.[3] Relying on § 1681b(3)(E), Handmaker and his firm assert that they had a legitimate business need for the consumer reports—preparing for the litigation the Duncans initiated. Moreover, the defendants argue, this need was connected to the underlying business transaction between Bankers Mortgage and the Duncans—the extension of the mortgage loan.

Unfortunately for Handmaker and his firm, we must reject their effort to shoehorn the use of the Duncans' consumer reports into § 1681b(3)(E). Basic principles of statutory construction prevent us from interpreting § 1681b(3)(E) in a fashion that allows a party to obtain a consumer report for a purpose only tangentially related to the extension of credit. The rule of ejusdem generis suggests that when general words—such as those that appear in § 1681b(3)(E)—follow specific terms, the general words should be construed "to embrace only objects similar in nature to those objects enumerated by the preceding specific words." *See Houghton v. New Jersey Mfrs. Ins. Co.,* 795 F.2d 1144, 1150 (3d Cir.1986) (citing *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 588, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980)). Section 1681b(3)(A) of the FCRA focuses on the extension of credit and the collection of debt. It permits a party to obtain a consumer report "in connection with a credit transaction . . . involving the extension of credit to, or review or collection of an account of, the consumer." If we were to interpret § 1681b(3)(E) too broadly, we would render the specificity of § 1681b(3)(A) meaningless. *See Houghton,* 795 F.2d at 1150; *see also Mone v. Dranow,* 945 F.2d 306, 308 (9th Cir.1991) (collecting cases). We also would inadvertently transform § 1681b(3)(E) into a provision that enabled information-seekers to circumvent the restrictions of the FCRA.

■ While a lawsuit occasionally may give rise to a "legitimate business need" for a consumer report, *see Spence v. TRW, Inc.,* 92 F.3d 380 (6th Cir.1996), trial preparation generally does not fall within the scope of § 1681b. *See Mone,* 945 F.2d at 308; *Houghton,* 795 F.2d at 1149; *see also Allen v. Calvo* 832 F.Supp. 301, 303 (D.Or.1993) (finding that § 1681b does not permit a party to obtain a consumer report in connection with a criminal investigation and prosecu-

---

**3.** Section 1681b was amended twice after the events in this case. *See* Intelligence Authorization Act for Fiscal Year 1998, Pub.L. No. 105–107, § 311(a), 111 Stat. 2248, *2256 (1997); Consumer Credit Reform Act of 1996, Pub.L. No. 104–208, § 2403, 110 Stat. 3009, *3009–430 (1996). As a result of the 1996 amendment, the "business need" exception (re-labeled § 1681b(3)(F)) now provides that a party may obtain a report if it "otherwise has a legitimate business need for the information—(i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account." 15 U.S.C. § 1681b(3)(F). This amendment—which does not apply here—arguably restricts the scope of the business need exception by further defining the circumstances in which it applies. Therefore the amendment may suggest that we should narrowly construe the unamended version of § 1681b. However, since we cannot ascertain whether the amendment merely clarifies Congress' original intent or creates new restrictions, we do not consider the amendment in deciding whether the business need exception applies in this case. *See Northrop,* 134 F.3d at 45 n. 5.

tion). In the limited instances where courts have allowed parties to obtain consumer reports pursuant to § 1681b(3)(E) for use in litigation, the legal dispute typically has related to the collection of a debt owed by the consumer. In *Allen v. Kirkland & Ellis,* for example, a district court permitted a law firm to obtain a consumer report to prepare for litigation over funds owed to its client. *See Allen v. Kirkland & Ellis,* No 91–c–8271, 1992 WL 206285 at *2 (N.D.Ill. Aug. 17, 1992); *see also Zeller v. Samia,* 758 F.Supp. 775 (D.Mass.1991). In finding that § 1681b(3)(E) applied, the *Allen* court emphasized, "The legal dispute which justified Kirkland & Ellis' request for plaintiff's credit report related to the collection of an alleged business debt. A different result may have been reached if the report had been acquired in connection with litigation that did not involve liability for a commercial obligation deriving from a business transaction between the parties." *Id,* at *3 n. 4. This interpretation of § 1681b(3)(E) comports with the rule of ejusdem generis. So long as the lawsuit involves the collection of a debt, the attorney is likely to procure the consumer report for a purpose analogous to those enumerated in § 1681b. *See* § 1681b(3)(A) (permitting reports to be obtained "in connection with a credit transaction involving the . . . collection of an account."). As a lawsuit moves outside the realm of debt collection, however, it is less likely—although not altogether impossible—that an attorney will obtain the report for a purpose that is within the purview of § 1681b. *Cf. Spence,* 92 F.3d at 383 (explaining that an agency may furnish a consumer report to a utility company that is being sued for alleged false reporting of a past-due debt).

Here we cannot conclude that Handmaker requested the Duncans' reports for a purpose that is sufficiently harmonious with those enumerated in § 1681b. The complaint in the underlying lawsuit alleged that Bankers Mortgage was negligent in failing to ensure that the well had been inspected. Handmaker thus obtained the reports in the course of defending his client against an allegation of negligence. And while the Duncans listed the principal and interest paid on the mortgage as damages stemming from the alleged negligence, the loan itself was not the subject of the lawsuit. Indeed, the Duncans have continued to make their payments and have not sought to rescind the loan.[4] Given these circumstances, we cannot deem preparation for a negligence suit "a legitimate *business* need . . . in connection with a *business* transaction." *See* § 1681b(3)(E) (emphasis added).

### III. Issues of Material Fact

As the foregoing discussion makes clear, the district court erred when it granted summary judgment on the ground that the defendants had obtained the Duncans' reports for a purpose that is permissible under the FCRA. However, in order to survive the defendants' motion for summary judgment, the Duncans must identify genuine questions of fact with respect to two material issues. First, as we have explained previously, an individual is operating under false pretenses if she obtains a consumer report for an impermissible purpose *and* fails to disclose the true purpose to the reporting agency. Second, as we will elaborate, to incur liability for obtaining a report under false pretenses, a party must act knowingly and willfully. We discuss each of these issues in turn.

With respect to whether Handmaker disclosed his true purpose to the reporting agency, we find genuine issues of fact that cannot be resolved on summary judgment. On its application for membership with the agency, Middleton & Reutlinger stated that it would use reports "[t]o obtain credit information regarding opponents in lawsuits." Arguably, of course, this is exactly what the defendants did. However, in the service

---

4. The defendants have suggested that the Duncans' lawsuit against Bankers raised questions regarding Bankers' liability to Countrywide Funding Corporation, the purchaser of the Duncans' mortgage. In the contract between Bankers and Countrywide, Bankers represented that the Duncans' property was in good repair and free of substantial damage. The contract required Bankers to repurchase the mortgage in the event that this representation was breached. But this does not transform the underlying lawsuit into an action about the collection of a debt. At root, the underlying case is about whether Bankers Mortgage was negligent.

agreement between the law firm and the reporting agency, the firm promised to comply with all provisions of the FCRA. Middleton & Reutlinger also agreed to disclose, at the time it placed an order, whether it had requested the report for general use "in connection with a business transaction involving the consumer" and to "specify the business need for such report." Service Agreement ¶ A. Handmaker does not appear to have abided by this provision when he requested the Duncans' reports. We cannot decide on summary judgment how to reconcile the disclosure on the application form with the promise to comply with the FCRA and with the failure to adhere to the terms of the service agreement.

■ There are also genuine issues of fact with respect to whether the defendants acted with the requisite state of mind. The Ninth Circuit has commented "that a user cannot . . . obtain consumer information for a purpose not permitted under § 1681b without a false pretense." *Hansen v. Morgan,* 582 F.2d 1214, 1219 (9th Cir.1978). In *Kennedy,* however, Judge Wellford disagreed with this statement because it did not reflect the requirement of § 1681q—which forms the basis for civil liability under § 1681n—that a person act *knowingly* and *willfully. See Kennedy,* 747 F.2d at 370 (Wellford, J., concurring). Given this requirement, we agree with Judge Wellford that, in order to incur civil liability for operating under false pretenses, a party must act willfully and purposefully "with a motivation to injure." *Id.* This interpretation comports with the language of § 1681n, which imposes liability for "willful noncompliance" with the FCRA. *Cf. Aetna Cas. & Sur. Co. v. Sunshine Corp.,* 74 F.3d 685, 688 (6th Cir.1996) (discussing the consequences of willful and negligent noncompliance with the FCRA and citing § 1681n only in reference to willful noncompliance); *Comeaux v. Brown & Williamson Tobacco Co.,* 915 F.2d 1264, 1273 n. 11 (9th Cir.1990) (same). This interpretation is also consistent with that of other circuits which, when confronted with a claim that a party is civilly liable for proceeding under false pretenses, have inquired whether the party acted knowingly and willfully. *See Zamora,* 811 F.2d at 1370–71; *see also Northrop,* 134 F.3d at 48 n. 10.

Accordingly, the defendants cannot be held civilly liable if they obtained the Duncans' reports "under what is believed to be a proper purpose under the statute but which a court . . . later rule[s] to be impermissible legally under § 1681b." *Kennedy,* 747 F.2d at 370 (Wellford, J., concurring). Here the statement that Middleton & Reutlinger made on its membership application may indicate that the defendants believed that preparation for litigation was a purpose generally sanctioned by § 1681b. On the other hand, the defendants *are* lawyers, and their failure to make a more specific disclosure at the time they requested the Duncans' consumer report may suggest that they knowingly obtained the report for an impermissible purpose. *Cf. Zamora,* 811 F.2d at 1371 (noting that as officers of a bank and former owners and employees of a credit bureau, the defendants knew the permissible purposes for obtaining consumer reports). In any event, this sort of unresolved question renders summary judgment inappropriate at this time. Accordingly, we REVERSE the grant of summary judgment and REMAND for further proceedings consistent with this opinion.