Christine D. **RODGERS**, Plaintiff,

v.

Barbara S. **McCULLOUGH**, et al., Defendants.

No. 02–2744 M1.

United States District Court, W.D. Tennessee, Western Division.

Dec. 3, 2003.

Warner Hodges, III, Esq., Hodges Law Firm, Germantown, TN, David B. Mour, Jeffrey A. Cross, Borowitz & Goldsmith, PLC, Louisville, KY, for plaintiff.

Richard Glassman, Esq., Glassman, Edwards, Wade & Wyatt, P.C., Memphis, TN, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

MCCALLA, District Judge.

This case is before the Court on three motions for partial summary judgment. Plaintiff has filed the following motions: (1) Plaintiff's Motion for Partial Summary Judgment Regarding the Defendants' Failure to Comply with the Fair Credit Reporting Act; (2) Plaintiff's Motion for Partial Summary Judgment Regarding Whether Defendants' Failure to Comply with the Fair Credit Reporting Act was Willful; and (3) Plaintiff's Motion for Partial Summary Judgment Regarding Whether the Defendants' Actions Constitute an Unlawful Invasion of Privacy. Plaintiff filed each of these motions on July 28, 2003. Defendants responded in opposition to each of the motions on August 27, 2003. For the following reasons, the Court GRANTS Plaintiff's first motion for partial summary judgment because Defendants did not have a permissible purpose to obtain Plaintiff's credit report. The Court DENIES the second motion for summary judgment on the question of whether Defendants actions were willful. The Court also DENIES the third motion on the question of unlawful invasion of privacy.

## I. Background

This case concerns Defendants' receipt and use of Christine Rodgers' consumer report. The material facts do not seem to be disputed. The parties agree that Ms. Rodgers gave birth to a daughter, Meghan, on May 4, 2001. Meghan's father is Raymond Anthony. Barbara McCullough, an attorney, represented Mr. Anthony in a child custody suit against Ms. Rodgers in which Mr. Anthony sought to obtain custody and child support from Ms. Rodgers. Ms. McCullough received, reviewed, and used Ms. Rodgers' consumer report in connection with the child custody case.

On September 25, 2001, Ms. McCullough instructed Gloria Christian, her secretary, to obtain Ms. Rodgers' consumer report.[1] Ms. McCullough received the report on September 27 or 28 of 2001. She reviewed the report in preparation for her examination of Ms. Rodgers during a hearing to be held in juvenile court on October 23, 2001. She also used the report during the hearing, including attempting to move the document into evidence and possibly handing it to the presiding judge.

---

1. Plaintiff asserts in her Motion for Partial Summary Judgment Regarding Defendants' Failure to Comply with the FCRA that Ms. McCullough is liable for Ms. Christian's actions in obtaining the report because Ms. McCullough requested that she do so. *Jones v. Federated Fin. Reserve Corp.,* 144 F.3d 961, 964–66 (6th Cir.1998). Defendants have not contested this point in their response.

The dispute in this case centers around whether Ms. McCullough obtained and used Ms. Rodgers' consumer report for a purpose permitted under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681b(a). Plaintiff contends that Ms. McCullough, as well as her law firm, Wilkes, McCullough & Wagner, a partnership, and her partners, Calvin J. McCullough and John C. Wagner,[2] are liable for the unlawful receipt and use of Ms. Rodgers' consumer report in violation 15 U.S.C. §§ 1681o (negligent failure to comply with the FCRA) and 1681n (willful failure to comply with the FCRA or obtaining a consumer report under false pretenses). Plaintiff has also sued Defendants for the state law tort of unlawful invasion of privacy.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

Plaintiff has moved for summary judgment on the questions of whether Defendants failed to comply with the FCRA (i.e. whether Defendants had a permissible purpose to obtain Ms. Rodgers' credit report), whether Defendants' alleged failure to comply was willful, and whether Defendants' actions constituted unlawful invasion of privacy.[3] The Court will address the FCRA claims followed by the state law claim for unlawful invasion of privacy.

### A. Permissible Purpose under the FCRA

██ Pursuant to the FCRA, "A person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section . . . ." 15 U.S.C. § 1681b(f)(1). Defendants do not dispute that Ms. McCullough obtained and

---

**2.** Plaintiff also asserts in all three motions that the other named Defendants, Calvin McCullough, John C. Wagner, and Wilkes, McCullough & Wagner, a partnership, are jointly and severally liable with Ms. McCullough because they are members of a general partnership and Ms. McCullough acted as an agent of the partnership. Tenn.Code Ann.

§§ 61–1–108(a), 61–1–112, 61–1–114(a) (2001). Defendants have not contested this point.

**3.** Plaintiff has not moved for summary judgment on the question of whether Ms. McCullough negligently failed to comply with the FCRA pursuant to 15 U.S.C. § 1681o.

used Ms. Rodgers' consumer report. (Def.'s Resp. to Pla.'s Stm't of Mat'l Facts Regarding Alleged Failure to Comply with the FCRA ¶¶ 17, 19, 34–36.)

Fifteen U.S.C. § 1681b(a) provides a list of permissible purposes for the receipt and use of a consumer report, of which the following subsection is at issue in this case:

[A]ny consumer reporting agency may furnish a consumer report under the following circumstances and no other:

. . . . .

(3) To a person which it has reason to believe–

(A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer . . .

15 U.S.C. § 1681(b)(A)(3). Defendants concede that Ms. McCullough's receipt and use of Ms. Rodgers' consumer report does not fall within any of the other permissible purposes enumerated in 15 U.S.C. § 1681b(a). (Def.'s Resp. to Pla.'s Stm't of Mat'l Facts Regarding Alleged Failure to Comply with the FCRA ¶¶ 21–23, 25–30.)

Ms. Rodgers requests summary judgment in her favor on this point, relying on the plain text of the statute, because she was not in arrears on any child support obligation at the time Ms. McCullough requested the consumer report, nor did she owe Ms. McCullough's client any debt. She notes that Mr. Anthony did not have custody of Meghan Rodgers and that an award of child support had not even been set at the time Ms. McCullough obtained her consumer report.

Defendants maintain that Ms. McCullough obtained Ms. Rodgers' consumer report for a permissible purpose, namely to locate Ms. Rodgers' residence and set and collect child support obligations. Defendants argue that 15 U.S.C. § 1681b(a)(3)(A) permits the use of a credit report in connection with "collection of an account" and, therefore, Ms. McCullough was permitted to use Ms. Rodgers' credit report in connection with the collection of child support.[4]

The cases Defendants have cited in response to the motion for summary judgment are inapplicable to the present facts. In each case cited by Defendants, the person who obtained a credit report did so in order to collect on an *outstanding* judgment or an *outstanding* debt. *See, e.g., Baker v. Bronx–Westchester Investigations, Inc.*, 850 F.Supp. 260, 262 (S.D.N.Y. 1994) (finding that collection of a judgment of arrears in child support is a permissible purpose under § 1681b(a)(3)(A)); *Korotki v. Attorney Servs. Corp.*, 931 F.Supp. 1269, 1277–79 (D.Md.1996) (holding that defendant had a permissible purpose for obtaining a consumer report where plaintiff owed an outstanding debt to the company).

However, no such outstanding debt or judgment existed in this case. At the time Ms. McCullough obtained Ms. Rodgers' consumer report, Ms. Rodgers' did not owe money to either Ms. McCullough or her client, Mr. Anthony. Defendants have provided no evidence showing that Ms. McCullough believed Ms. Rodgers owed money to Mr. Anthony at the time she requested the credit report. Indeed, Mr. Anthony had not even been awarded custody of Meghan Rodgers at the time Ms.

4. Defendants also admit that Ms. McCullough used the credit report to portray Ms. Rodgers as irresponsible, financially unstable, and untruthful about her residence and employment history to the Juvenile Court. (Def.'s Resp. to Pla.'s Stm't of Mat'l Facts Regarding Alleged Failure to Comply with the FCRA ¶¶ 35–36.) Defendants do not allege that these constitute permissible purposes under the FCRA.

McCullough obtained and used the credit report. Ms. McCullough acknowledged each of the facts during her deposition. (McCullough Dep. at 97–99.) Moreover, in response to Plaintiff's request for admissions, Ms. McCullough admitted that she did not receive the credit report for the purpose of collecting on an account from Ms. Rodgers. (Resp. to Pla.'s First Request for Admissions ¶ 57.)

The evidence before the Court makes clear that Ms. McCullough was actually attempting, on behalf of Mr. Anthony, to secure custody of Meghan Rodgers and obtain a future award of child support payments from Ms. Rodgers by portraying Ms. Rodgers as irresponsible to the court. (McCullough Dep. at 157–158.) These are not listed as permissible purposes under 15 U.S.C. § 1681b(a)(3)(A). Defendants have offered the Court no reason to depart from the plain language of the statute, which clearly does not permit an individual to obtain a consumer report for the purposes of obtaining child custody and instituting child support payments.[5] Moreover, the fact that the Juvenile Court later awarded custody and child support to Mr. Anthony does not retroactively provide Ms. McCullough with a permissible purpose for obtaining Ms. Rodgers' consumer report. Therefore, the Court GRANTS Plaintiff's motion for partial summary judgment on the question of whether Defendants had a permissible purpose to obtain Ms. Rodgers' credit report.

**B. Willful Failure to Comply with the FCRA**

Pursuant to 15 U.S.C. § 1681n(a), "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for the specified damages.

■■■■ "To show willful noncompliance with the FCRA, [the plaintiff] must show that [the defendant] 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.'" *Phillips v. Grendahl*, 312 F.3d 357, 368 (8th Cir. 2002) (citations omitted). "Under this formulation the defendant must commit the act that violates the Fair Credit Reporting Act with knowledge that he is committing the act and with intent to do so, and he must also be conscious that his act impinges on the rights of others." *Id.* "The statute's use of the word 'willfully' imports the requirement that the defendant know his or her conduct is unlawful." *Id.* A defendant can not be held civilly liable under § 1681n if he or she obtained the plaintiff's credit report "under what is believed to be a proper purpose under the statute but which a court ... later rules to be impermissible legally under § 1681b." *Duncan v. Handmaker*, 149 F.3d 424, 429 (6th Cir.1998), quoting *Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 370 (6th Cir.1984) (Wellford, J., concurring).

■■■■ Ms. McCullough is an attorney who signed multiple service contracts with Memphis Consumer Credit Association indicating that the primary purpose for which credit information would be ordered was "to collect judgments." Ms. McCullough also agreed in these service contracts to comply with the FCRA. Her deposition testimony indicates that she had never previously ordered a consumer report for purposes of calculating child support. (McCullough Dep. 42–43.) This evidence may give rise to an inference that

---

5. By contrast, the "head of a State or local child support enforcement agency" may request a consumer report for the purpose of establishing an individual's capacity to make child support payments or to determine the appropriate level of payments. 15 U.S.C. § 1681b(a)(4)(A).

Ms. McCullough was aware that she did not order Ms. Rodgers' consumer report for a purpose permitted under the FCRA.

Defendants argue in their responsive memorandum that if Ms. McCullough had suspected that she had obtained Ms. Rodgers' credit report in violation of the FCRA, it is unlikely that she would have attempted to present the report to the Juvenile Court as evidence during the custody hearing for Meghan Rodgers. Ms. McCullough also testified that she believed she had a permissible purpose for obtaining Ms. Rodgers' consumer report (i.e. to set and collect child support obligations).

Viewing the evidence in the light most favorable to the nonmoving party, Defendants have made a sufficient showing that Ms. McCullough may not have understood that she lacked a permissible purpose under the FCRA to obtain and use Ms. Rodgers' credit report.

If Ms. McCullough was not aware that her actions might violate the FCRA at the time she obtained and used Ms. Rodgers' credit report, she would not have willfully failed to comply with the FCRA. The question of Ms. McCullough's state of mind at the time she obtained and used Ms. Rodgers' credit report is an issue best left to a jury. *Wilson v. Seiter,* 893 F.2d 861, 866 (6th Cir.1990), *vacated on other grounds,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) ("state of mind is typically not a proper issue for resolution on summary judgment"). The Court DENIES Plaintiff's motion for summary judgment on the question of willfulness under 15 U.S.C. § 1681n(a).

### C. Obtaining a Consumer Report under False Pretenses or Knowingly without a Permissible Purpose

Pursuant to 15 U.S.C. § 1681n(b), "Any person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable" for damages.

■ There are several prerequisites to a finding of liability under § 1681n(b). "First, ... an individual is operating under false pretenses if she obtains a consumer report for an impermissible purpose *and* fails to disclose the true purpose to the reporting agency. Second, ... a person must act knowingly and willfully." *Duncan,* 149 F.3d at 428 (emphasis in original). Moreover, "a party must act willfully and purposefully 'with a motivation to injure.'" *Id.* at 429, quoting *Kennedy,* 747 F.2d at 370 (Wellford, J., concurring). However, a defendant can not be held civilly liable under § 1681n if he or she obtained the plaintiff's credit report "under what is believed to be a proper purpose under the statute but which a court ... later rules to be impermissible legally under § 1681b." *Duncan v. Handmaker,* 149 F.3d 424, 429 (6th Cir.1998), quoting *Kennedy v. Border City Sav. & Loan Ass'n,* 747 F.2d 367, 370 (6th Cir.1984) (Wellford, J., concurring).

■ For the same reasons the Court denied Plaintiff's motion for summary judgment on the question of willfulness, the Court also DENIES Plaintiff's motion for summary judgment on the question of whether Ms. McCullough obtained and used Ms. Rodgers' credit report under false pretenses or knowingly without a permissible purpose.

### D. Unlawful Invasion of Privacy

Plaintiff also seeks a determination on a motion for summary judgment that Defendants invaded her privacy. Plaintiff seeks a finding of liability and has not presented evidence on the amount of her alleged damages at this time.

■ Tennessee recognizes a cause of action for invasion of privacy. *Langford v. Vanderbilt Univ.,* 199 Tenn. 389, 287

S.W.2d 32, 37–39 (1956). The tort of invasion of privacy is divided into four distinct causes of action: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) public disclosure of private facts; and (4) placing another in a false light to the public. *West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 642–43 (Tenn. 2001); Restatement (Second) of Torts § 652A–E (1977). Plaintiff made clear in her motion for summary judgment that she asserts a claim under the theory of unreasonable intrusion upon seclusion.

 An invasion of privacy claim for unreasonable intrusion upon seclusion has been defined by the Restatement as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B; *Givens v. Mullikin*, 75 S.W.3d 383, 411 (Tenn.2002) (finding that Tennessee has adopted the common law invasion of privacy tort as described in § 652B); *Roberts v. Essex Microtel Assocs.*, 46 S.W.3d 205, 210–11 (Tenn.Ct.App.2000) (same). To succeed on this type of claim "a plaintiff must allege and prove the following essential elements: (1) that the information sought by the opposing party was not properly discoverable or was otherwise subject to some form of privilege; (2) that the opposing party knew that the information was not discoverable or was subject to privilege, but nevertheless proceeded to obtain that information; (3) that the obtaining of such information would be highly offensive to a reasonable person; and (4) that injury was suffered from the invasion of privacy." *Givens*, 75 S.W.3d at 412. The information need not be publish-

ed to establish a claim for this type of invasion of privacy claim. *Givens*, 75 S.W.3d at 411.

Relying on comment B to § 652B of the Restatement, Plaintiff asserts that the financial information contained in her consumer report was private information, which Defendants did not have a right to access because they did not have a permissible purpose under the FCRA. Comment B provides that the form of invasion contemplated by this section may be by "investigation or examination into [an individual's] private concerns, as by ... opening his [or her] private and personal mail, searching his [or her] safe or his [or her] wallet, examining his [or her] private bank account . . . ."

Plaintiff maintains that Ms. McCullough accessed her credit report, knowing that she had no legal right to do so. Ms. Rodgers further maintains that the act of obtaining her credit report and using it to portray her in a bad light to the court would be highly offensive to a reasonable person and that she has suffered damages because she lost custody of Meghan Rodgers.

Defendants make two arguments in response to Plaintiff's motion for summary judgment. First, Defendants maintain that Plaintiff waived whatever privacy interest she may have had in the financial information contained in her credit report when she contested Mr. Anthony's custody petition. Second, Defendants argue that the trier of fact should determine whether the alleged intrusion would be highly offensive to a reasonable person.

 Defendants correctly note that a plaintiff may waive a privacy interest by placing private matters at issue in a litigation proceeding. *Givens*, 75 S.W.3d at 412; *Langford*, 287 S.W.2d at 38–39. However, that is precisely the opposite of what occurred in this case. Mr. Anthony

and his attorney, Ms. McCullough, actually placed Ms. Rodgers' financial affairs in question when they filed an Intervening Petition for Custody Pursuant to T.C.A. 37–1–130, in which Mr. Anthony alleged that Ms. Rodgers was "not stable in her residence, or employment" and that she was "not able to adequately financially support" Meghan Rodgers. (Sept. 25, 2001 Custody Petition at 2.) Ms. McCullough then raised a number of questions from the credit report during her cross-examination of Ms. Rodgers in the child custody hearing to show that Ms. Rodgers was irresponsible. (Transcript of Hearing 10/23/01 at 113, 117.) By contrast, the Court has no indication that Ms. Rodgers ever placed evidence of her finances before the Juvenile Court. During Ms. Rodgers' direct testimony at the custody hearing, the only mention of Ms. Rodgers' finances was a discussion of two occasions on which Mr. Anthony had allegedly given her money and the corresponding deposits to her bank account. (Transcript of Hearing 10/23/01 at 101, 104, 108–10.)

The cases cited by Defendants do not support the theory of waiver here. In two of the cases cited, the courts found the plaintiff had waived his or her rights to privacy by initiating an earlier lawsuit and previously making a legal issue of the very thing he or she sought to keep private. *Langford,* 287 S.W.2d at 38–39 (plaintiffs had no privacy right in information they had already made public by filing a suit in court); *Glenn v. Kerlin,* 248 So.2d 834, 836 (La.Ct.App.1971) (plaintiff waived right to privacy regarding his medical condition when he filed prior lawsuit against his doctor in which he made a legal issue of his medical condition). The other two cases cited by Defendants involved suits against newspapers for invasion of privacy and are not apposite to the present facts. *Berg v. Minneapolis Star & Tribune Co.,* 79 F.Supp. 957, 961–62 (D.Minn.1948) (newspaper did not violate right to privacy by printing photographs of husband involved in divorce suit); *Hurley v. Northwest Publ'ns, Inc.,* 273 F.Supp. 967, 976 (finding no invasion of privacy where newspaper reported allegations of complaint filed in an estate dispute).

In this case, Ms. Rodgers did not file the custody petition with the Juvenile Court and did not place her financial condition in issue. Therefore, the Court could only find a waiver if Ms. Rodgers presented evidence of her financial condition to the Juvenile Court. After reviewing the transcript of the custody hearing, there is no indication that Ms. Rodgers presented evidence of her financial condition during the hearing. Therefore, this Court can not conclude as a matter of law that Ms. Rodgers waived her right to privacy in the financial information contained in her credit report.

Finally, the Court has been asked to determine as a matter of law that Ms. McCullough's alleged invasion of Ms. Rodgers' privacy would be highly offensive to a reasonable person. The issue of whether Ms. McCullough's actions would have been highly offensive to a reasonable person will not be determined on this motion for summary judgment because it is a question best left to the jury that will hear this case. The Court DENIES Plaintiff's motion for partial summary judgment as to the claim for invasion of privacy.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Partial Summary Judgment Regarding Defendants' Failure to Comply with the Fair Credit Reporting Act. The Court DENIES Plaintiff's remaining motions for partial summary judgment.