Karen S. COLE, Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, et al., Defendants.

No. CIV.A. 04–2073–CM.

United States District Court, D. Kansas.

Jan. 18, 2006.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

Plaintiff Karen Cole brings this suit against defendants American Family Mutual Insurance Company ("American Family"), Gary Cole, and Leroy Adler for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* This matter comes before the court on Defendant Gary Cole's Motion for Summary Judgment (Doc. 83), Defendant American Family's Motion for Summary Judgment (Doc. 87), and Defendant Leroy Adler's Motion for Summary Judgment (Doc. 88). For the following reasons, the court denies the motions.

## I. Facts [1]

Plaintiff and defendant Cole married in 1970 and remained married until February 21, 2003. In 2002 and 2003, defendant Cole worked for defendant American Family in a non-supervisory position, and was not authorized to obtain credit reports in connection with his position. Defendant Adler also worked for defendant American Family in a non-supervisory position at that time, but his position authorized him to obtain credit reports for American Family insurance underwriting purposes.

Twice, defendant Cole asked defendant Adler to obtain plaintiff's credit report. Both times, defendant Cole told defendant Adler that he needed the report because he was going through a nasty divorce. Defendant Adler then obtained plaintiff's credit report using defendant American Family's computer on or about September 20, 2002 and February 7, 2003. Both times he obtained plaintiff's credit report, defendant Adler faxed the credit report to defendant Cole. Defendant Cole gave the reports to his divorce lawyer and his accountant to assist them in trying to track missing joint marital assets and in representing him in his divorce. No one else ever saw the credit reports, and defendant Cole made no other use of them.

Plaintiff did not give her permission for defendants to obtain her credit reports, and no court order authorized defendants to obtain the reports. But plaintiff and defendant Cole were legally married each time defendant Adler obtained plaintiff's credit report. By September 20, 2002, however, plaintiff had already filed for divorce from defendant Cole.

During the course of the marriage, plaintiff and defendant Cole conducted nearly all of their financial transactions on a joint basis. They had joint checking and savings accounts into which they both deposited their pay checks. They jointly took out car loans and other personal loans. They made real estate purchases, including their home and rental property, that were purchased jointly and titled in both names. Moreover, they both signed the loans and mortgages on said real estate. And credit cards were nearly always issued to allow either spouse to use them.

In 2002 and 2003, defendant American Family had written policies in place instructing employees that credit reports could be accessed only for American Family underwriting purposes. Defendant American Family terminated Defendant Cole's employment because he violated corporate policies by accessing plaintiff's credit report. Defendant Adler was reprimanded for violation of the policies.

On or about October 12, 2002 and February 23, 2003, plaintiff reviewed a copy of her credit report and saw the entries showing defendant American Family's inquiry into her credit history. At the time defendant Adler obtained plaintiff's credit reports, plaintiff's credit rating was "good." The credit inquiries at issue in this lawsuit had no impact on plaintiff's ability to obtain credit, and plaintiff has not suffered any economic loss as a result of the two credit inquiries. But plaintiff claims that she has suffered from anxiety, inability to sleep, and depression because of the incidents.

## II. Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In

---

**1.** The court construes the facts in the light most favorable to plaintiff as the non-moving party pursuant to Fed.R.Civ.P. 56.

applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## III.  Discussion

### A.  Was there a violation of the FCRA?

Defendants [2] argue that they did not violate the FCRA for two reasons: (1) defendants had a legitimate business need to obtain the reports in connection with a business transaction; and (2) the reports were, by definition, "consumer reports" about defendant Cole because he was married to plaintiff.

■ The court rejects defendants' argument that they had a legitimate business need to obtain the reports in connection with a business transaction. Although the FCRA permits a party to obtain a report for this purpose, *see* 15 U.S.C. § 1681b(3)(E), the court finds that applying this provision to the case at hand extends the reach of the statute beyond what Congress intended. Defendants argue that the divorce proceeding was a "business transaction" because money and property issues were being determined. Defendants have not cited any authority for their position, and the court does not find it persuasive. Moreover, the court notes that the Federal Trade Commission Commentary to § 1681b(3)(E) expressly recognizes that "litigation is not a 'business transaction' involving the consumer." 55 Fed.Reg. 18,816 (May 4, 1990).

■ The court also rejects defendants' position that plaintiff's credit report was, in essence, a report about defendant Cole, and that he was entitled to it because he was married to plaintiff. Defendants submit that because plaintiff's credit report revealed financial transactions involving the couple's joint finances and had a bearing on defendant Cole's credit worthiness, credit standing, and credit capacity, it was, by definition, a consumer report on defendant Cole. *See id.* § 1681a(d) (defining a "consumer report" as "any ... communication bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living...."). But defendant Cole also admits that he wanted plaintiff's credit report to search for information that differed from his own report—"because he was trying to determine what she had done with joint marital assets" that he claimed "she had taken and hidden." By his own admission, defendant Cole was searching for items on his wife's report that differed from his own report.

Other courts that have considered this issue have found that a spouse may not obtain another spouse's credit report for the reasons asserted in this case. *See, e.g., Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 969, 971–72 (4th Cir.1987) (holding it impermissible to obtain ex-spouse's credit report to compare current accounts with former joint accounts); *Rodgers v. McCullough,* 296 F.Supp.2d 895, 901 (W.D.Tenn.2003) (granting summary judgment to mother where father's attorney obtained mother's credit report in dispute over custody and support); *Thibodeaux v. Rupers,* 196 F.Supp.2d 585, 591–92 (S.D.Ohio 2001) (finding it impermissible to obtain spouse's credit report to find out if spouse was

---

2.  Although the court discusses defendants' arguments collectively, some arguments are made only by defendant Cole, while others are made only by defendants Adler and American Family.  The differences are not important for purposes of this Memorandum and Order.

concealing assets or engaging in other financial misconduct); *Northrup v. Hoffman of Simsbury, Inc.,* 2000 WL 436612, at *1, *3–*4 (D.Conn. Mar.15, 2000) (discussing case and reducing damages where jury awarded actual and punitive damages under FCRA for obtaining credit report on divorcing spouse); *see also* Appendix—Commentary on the Fair Credit Reporting Act, 16 C.F.R. Pt. 600, App. § 604(3)(A)(5)(B) (2001) ("There is no permissible purpose to obtain a consumer report on a nonapplicant former spouse or on a nonapplicant spouse who has legally separated or otherwise indicated an intent to legally disassociate with the marriage."); *Bakker v. McKinnon,* 152 F.3d 1007, 1011–12 (8th Cir.1998) (finding it impermissible to obtain defendant's credit report to see if assets were being transferred); *Duncan v. Handmaker,* 149 F.3d 424, 427–28 (6th Cir.1998) (holding that use of a credit report in litigation outside of the realm of debt collection generally will be an impermissible purpose). The cases that defendants cite to the contrary, *Smith v. GSH Residential Real Estate Corp.,* 935 F.2d 1287, 1991 WL 106191 (4th Cir. June 20, 1991), *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37 (D.D.C.1984), and *Edge v. Professional Claims Bureau, Inc.,* 64 F.Supp.2d 115 (E.D.N.Y.1999), are distinguishable because all three cases involve credit reports requested in conjunction with a type of credit transaction or debt collection. Here, defendants, who were not even creditors, requested the reports in conjunction with divorce proceedings.

## B. Can defendants be held liable for violating the FCRA?

Defendants argue that they cannot be held liable for violating the FCRA for three reasons: (1) their conduct was not willful; (2) even if their conduct was negligent, plaintiff has not shown actual damages, which are required; and/or (3) plaintiff is precluded from recovering any damages based on the doctrine of "unclean hands."

■ Under 15 U.S.C. § 1681n(a), a violation of the FCRA must be willful to result in enhanced damages (beyond actual damages). *Zamora v. Valley Fed'l S & L Ass'n,* 811 F.2d 1368, 1370 (10th Cir.1987). In order to show willful noncompliance with the FCRA, a plaintiff "must show that [the defendant] 'knowingly and intentionally committed an act in conscious disregard for the rights of others,' but need not show 'malice or evil motive.' " *Bakker,* 152 F.3d at 1013 (citations and additional quotation marks omitted). But a defendant may not be held civilly liable if it obtained a report " 'under what is believed to be a proper purpose under the statute but which a court … later rule[s] to be impermissible legally….' " *Duncan,* 149 F.3d at 429 (citation omitted).

■ The facts in this case are controverted as to exactly what defendants Cole and Adler thought at the time they obtained the credit reports. Arguably, both defendants, by virtue of their jobs and previous jobs, should have been familiar with the FCRA's permissible purposes for obtaining consumer credit reports. Defendant Adler admitted in his deposition that it was his understanding that neither obtaining a credit report for a friend nor obtaining a credit report for use in divorce proceedings was a permissible purpose under the FCRA. He also admitted that after September 2002, he thought he shouldn't have requested plaintiff's credit report, and still thought that when defendant Cole called him again in February 2003.[3] Al-

---

**3.** The court understands defendants' position that this evidence is irrelevant and inadmissible in deciding these summary judgment motions. Defendants argue that defendant

Adler's acknowledgment that he should not have obtained the credit reports pertains only to the fact that he was violating American

though defendant Adler's affidavit states that he thought it was lawful at the time to pull a credit report regarding a spouse without the spouse's consent, this statement could reasonably be read to conflict with defendant Adler's earlier deposition testimony. Moreover, the manner in which defendant Cole requested the credit reports—by asking a friend instead of going through other channels—suggests that he knew he had no right to the reports. The question of defendants' state of mind at the time they obtained the credit reports is an issue best left for the jury. *See Rodgers,* 296 F.Supp.2d at 902.

Assuming for the purposes of summary judgment that their actions were negligent—which would only entitle plaintiff to actual damages incurred—defendants next argue that plaintiff cannot recover because she cannot demonstrate damages arising from defendants' acts of obtaining her credit reports for an improper purpose. *See* 15 U.S.C. § 1681o(a)(1). Plaintiff alleges that she has suffered mental distress. Mental distress constitutes a recoverable element of damage under the FCRA, *Thompson v. San Antonio Retail Merchs. Ass'n,* 682 F.2d 509, 513–14 (5th Cir.1982), but it must be supported by something more than conclusory allegations, *see Riley v. Equifax Credit Info. Services,* 194 F.Supp.2d 1239, 1244 (S.D.Ala.2002). Here, plaintiff has offered evidence that she was crying, hysterical, panicky, and an "emotional wreck" because defendants accessed her credit reports. She states that she suffered anxiety, inability to sleep, and depression, and her son has corroborated her claims. At this stage of the proceedings, the court finds that plaintiff has offered sufficient evidence of her damages to survive defendants' motions for summary judgment.

▮ Finally, defendants argue that the doctrine of "unclean hands" prevents plaintiff from recovering any damages. In support of this argument, defendants cite numerous controverted facts about plaintiff's conduct during and before the divorce proceedings. According to defendants, plaintiff's own misconduct should bar her claims against defendants. Defendants cite no authority for the proposition that the unclean hands doctrine applies to claims under the FCRA, and the court has not found any. The only case the court has found on the subject supports the opposite conclusion. *See, e.g., St. Paul Guardian Ins. Co. v. Johnson,* 884 F.2d 881, 883 (5th Cir.1989) ("[T]here is no indication in the instant case that the protection provisions of the FCRA are reserved for only those who have done no wrong."). Moreover, were the court to hold that the unclean hands doctrine can be used to prohibit a consumer from bringing an action under the FCRA, then arguably any consumer who had wrongfully not paid a debt would be precluded from bringing an FCRA action against a creditor who failed to follow statutory procedures. The court declines to set such a precedent.

## C. Can any liability on the part of defendant Adler be imputed to defendant American Family?

Defendant American Family previously filed a motion to dismiss plaintiff's complaint, arguing that the FCRA does not contemplate vicarious liability. In a Memorandum and Order filed August 11, 2004, the court observed that the FCRA does

---

Family's policies, and not to the fact that he was violating the law. Defendants also argue that the acknowledgment reflects afterthought, and not necessarily what defendant Adler thought at the time he was accessing the reports. The court disagrees, and finds

that defendant Adler's answers in his deposition to properly-asked questions are general enough that they create a genuine issue of material fact as to his understanding of the law at the time he obtained the credit reports.

not explicitly provide for vicarious liability, but suggested that common-law principles of agency may apply in this case. The court directed the parties to brief on summary judgment whether the "apparent agency" theory or the *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998) "aided-in-the-agency-relation" rule applies under the facts of this case, and whether any affirmative defenses exist or apply.

The court has already discussed the law applicable to defendant American Family's potential vicarious liability at length, *see Cole v. Am. Family Mut. Ins. Co.*, 333 F.Supp.2d 1038 (D.Kan.2004), and will not repeat it here. Based on the parties' briefs and the evidence before it, the court concludes that a triable issue of fact exists as to whether any liability on the part of defendant Adler should be imputed to defendant American Family, regardless of which agency theory applies.

Defendant American Family may only be held liable for the acts of defendant Adler if it did not have reasonable procedures in place to ensure compliance with the FCRA. *Cf.* 15 U.S.C. § 1681m(c) (providing, with respect to consumer reporting agencies, that "[n]o person shall be held liable for any violation of this section if he shows by a preponderance of the evidence that at the time of the alleged violation he maintained reasonable procedures to assure compliance with the provisions of this section"). Defendant American Family has offered evidence that it has reasonable policies and procedures in place. It requires passwords to access workstations from which credit reports can be obtained, and has distributed copies of its written policy which prohibits employees from obtaining consumer reports for reasons other than American Family insurance under-

writing. Plaintiff counters that these measures do not prevent any employee from sitting down at a computer and clicking on an icon to obtain a credit report, and that copies of the policy were stored on shelves and not referenced. Moreover, plaintiff argues, perhaps if there had been a reasonable internal check on access to credit information, such as requiring two people to sign off on pulling a credit report, this case would not be before the court.

█ Viewing the facts in the light most favorable to plaintiff, as the court must, the court cannot conclude as a matter of law that defendant American Family's measures were reasonable.[4] The court will submit to the jury the question of whether defendant American Family should be held liable for defendant Adler's actions on an agency theory.

**IT IS THEREFORE ORDERED** that Defendant Gary Cole's Motion for Summary Judgment (Doc. 83), Defendant American Family's Motion for Summary Judgment (Doc. 87), and Defendant Leroy Adler's Motion for Summary Judgment (Doc. 88) are denied.

---

4. The court emphasizes that the relevant question is whether defendant American Family's measures were *reasonable*. The court is not suggesting that any form of strict liability is appropriate here.